HEYDUCK, APPELLEE, *v.* THE ELDER & JOHNSTON COMPANY, APPELLANT.

(No. 2676—Decided March 10, 1962.)

*Mr. Elton S. Gallon* and *Mr. Joseph B. Miller,* for appellee.
*Mr. P. Eugene Smith,* for appellant.

Sherer, J. This is an appeal on questions of law from a judgment rendered by the Common Pleas Court of Montgomery County on a verdict returned by a jury in favor of the plaintiff, appellee herein and hereinafter referred to as plaintiff.

Defendant, appellant herein and hereinafter called defendant, contends that the court erred to the prejudice of defendant, as follows:

1. No evidence supported plaintiff's allegations of negligence against defendant, by reason whereof the trial court should have sustained appellant's motions to direct a verdict for the defendant at the close of plaintiff's case and again at the end of the introduction of all the evidence.

2. The verdict of the jury and the judgment rendered thereon are contrary to law for lack of any evidence connecting defendant with the event as to which plaintiff complains.

3. The trial court erred by failing to sustain appellant's motion for judgment *non obstante veredicto*.

Where a defendant, at the close of all the evidence, moves the court to direct a verdict in its favor, the plaintiff is entitled to have the evidence construed most strongly in his favor. Where, on the trial of a cause, substantial evidence has been introduced from which it might reasonably be concluded that defendant was guilty of negligence which was the proximate cause of plaintiff's injury, the court may not sustain defendant's motion for a directed verdict. The test is not whether the trial judge would set aside a verdict in favor of plaintiff on the weight of the evidence. Where there is no defect in the statements contained in plaintiff's pleadings and there is substantial evidence from which a reasonable conclusion might be drawn that defendant was guilty of negligence proximately causing plaintiff's injury, a motion *non obstante veredicto* attacking a verdict in favor of plaintiff may not be sustained. The weight of the evidence is not involved upon such a motion. *Wilkeson, Admr.,* v. *Erskine & Son, Inc.,* 145 Ohio St., 218.

At page 228, Turner, J., writing the opinion for the court, quoted from 39 Ohio Jurisprudence, 803, Section 183: "'In other words, the evidence must be construed favorably to the submission of the case to the jury, and the trial judge should indulge in every possible consideration in favor of such submission.'"

226

In construing the evidence in this case most strongly in favor of plaintiff, the jury could have found these probative facts from the evidence offered by plaintiff: That plaintiff was standing in an alley running east and west when he was struck on the top of the head to the back by a package in a cellophane wrapper containing a new mattress cover; that at the time he was struck he was facing north talking to another truck driver; that the main store used and occupied by the defendant is located on the north side of the alley; that the Hollencamp building and the Hagerman building abut the alley to the south; that there are openings between the Hollencamp and Hagerman buildings which permit traffic to flow freely between them; that the main store and the other two buildings are connected by an overpass by which one can pass back and forth from the main store on the north to the other two buildings from the third, fourth and fifth floors; that the Hagerman building is located west of the overpass and the Hollencamp building is to the east of the Hagerman building and east of the overpass; that there are windows on the alley side of defendant's main store east of the overpass; that there are no such windows west of the overpass on the south side of the main store; that there is a small window on the alley side of the Keith building which is west of the main store; that the Hollencamp and Hagerman buildings abutting on the south side of the alley are used and occupied by defendant for a warehouse; that defendant receives merchandise in the Hagerman building which is west of the overpass on the south side of the alley; that there are seven floors in the Hagerman building; that the receiving department and garage are located on the first floor; that the second floor is used as a stockroom; that the third floor is used to mark merchandise; that the fourth floor is used for a fur vault and to store cash registers; that the fifth floor is a stockroom; that the sixth floor is a marking and stock room; that all of the floors in this building have windows overlooking the alley; that there were shelves on the wall next to the alley near the windows on the sixth floor on which were stored blankets, sheets, pillow cases, mattress covers, quilts and other articles having to do with bedding or linens; that in addition to those employed by defendant in the warehouse, other persons come there, such as

employees of defendant from the main store across the alley, sometimes with customers to look at merchandise, persons who come after boxes to use in moving, salesmen who check the stock to determine whether the quantity is sufficient; that at the time plaintiff was struck by the mattress cover he was standing in the alley facing north at a point directly opposite the door leading into the Hagerman building back of him to the south and below the windows of that building on the upper floors; that immediately after he was struck several people were looking down upon the alley from open windows in the Hagerman building, one boy in a white T shirt from the sixth floor and the others from the fifth floor; that after plaintiff was struck by the package two boys ran out from the Hagerman building, retrieved the package and went back into that building; that after plaintiff was struck an employee of defendant employed as shipping clerk on the first floor of the Hagerman building came into the alley because someone had told him something; that this employee told plaintiff that if he felt he had been hurt he should report to defendant's nurse in the first-aid department; that a receiving clerk employed by defendant was standing in the doorway of the Hagerman building back of plaintiff and saw the package fall and strike plaintiff; that this employee, plaintiff and the other truck driver were the only persons in or near the alley at the time and place of the accident; that it is not the usual thing for a customer, sales person or any person other than employees of defendant to be on the sixth floor of the Hagerman building; and that the mattress cover which struck plaintiff looks similar to mattress covers sold by the defendant.

Upon this evidence, the Common Pleas Court overruled defendant's motions to direct a verdict, applied the doctrine of *res ipsa loquitur* and so charged the jury. Defendant contends that the facts do not warrant the application of this doctrine, and plaintiff concedes in argument that the judgment must fail if the doctrine is not applicable.

A definition of the doctrine is found in paragraph two of the syllabus in *Fink* v. *New York Central Rd. Co.*, 144 Ohio St., , which reads:

"In Ohio the rule of *res ipsa loquitur* is not a rule of substantive law but is a rule of evidence which permits the jury, *but not the court in a jury trial,* to draw an *inference* of negli-

gence where the instrumentality causing the injury was under the exclusive management and control of the defendant and the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. * * *''

In the case of *Soltz* v. *Colony Recreation Center,* 151 Ohio St., 503, the Supreme Court reviewed the cases in which the doctrine had been applied and denied and held, in paragraph one of the syllabus:

''The doctrine of *res ipsa loquitur* may be applicable where (a) the instrumentality causing the injury was under the exclusive management and control of the defendant and (b) 'the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.' *(Fink* v. *N. Y. Central Rd. Co.,* 144 Ohio St., 1, approved and followed.)''

The court said, at page 510:

''Generally the amount of care required to constitute ordinary care, is commensurate with the danger involved. Thus, under circumstances of peculiar peril, a greater amount of care is required than where the circumstances are less perilous, because prudent and careful persons, having in view the object to be attained and the just rights of others, are, in such cases, accustomed to exercise more care than in cases less perilous. The amount of care is increased, but the standard is still the same. It is still nothing more than ordinary care under the circumstances of that particular case. * * *''

And, at page 511 therein, the court said further:

''Our conclusion, therefore, is that, in determining whether 'the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed' so that the doctrine of *res ipsa loquitur* could be applied, the trial court should consider whether the circumstances are such as to indicate that ordinary care would require a high degree or greater amount of care on the part of the defendant.

''Only in such a situation can it be said, in the absence of any evidence of negligence, that the accident was more probably the result of a negligent than of some other cause. In effect, before applying the doctrine of *res ipsa loquitur,* the court must

be warranted in taking judicial notice of the fact that the accident does not happen in the ordinary course of events unless there is negligence. See *Cincinnati Traction Co.* v. *Holzenkamp, supra* [74 Ohio St., 379], at 389. When ordinary care does not require a great amount of care, it will be just as likely, in the absence of evidence tending to prove negligence, that the accident was due to a cause other than negligence. Where no probability of negligence is indicated by the mere happening of the accident, the jury should not be permitted to infer negligence without some evidence tending to prove it."

At pages 507, 508 and 509 therein, the Supreme Court, in reviewing the cases in which that court had applied the rule, said:

"In addition to the passenger common carrier cases, the doctrine of *res ipsa loquitur* has been applied by this court to cases involving the delivery by a druggist of an injurious drug to a customer, instead of a harmless drug which had been asked for (*Edelstein* v. *Cook*, 108 Ohio St., 346, 140 N. E., 765, 31 A. L. R., 1333); the sudden bursting of the engine on a car, which was carrying employees of defendant, causing it to jump the track (*Walters* v. *B. & O. S. W. Ry. Co.*, 111 Ohio St., 575, 146 N. E., 75); high voltage electric wires which fell on a highway (*Glowacki, a Minor,* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486, see *Loomis* v. *Toledo Railways & Light Co.*, 107 Ohio St., 161, 140 N. E., 639); an explosion of a highly explosive substance (*Hiell* v. *Golco Oil Co., supra*); accidents where motor vehicles had left the highway upon which they were being driven (*Scovanner* v. *Toelke*, 119 Ohio St., 256, 163 N. E., 493, *Morrow* v. *Hume, Admx.*, 131 Ohio St., 319, 3 N. E. [2d], 39, and *Weller, Exrx.,* v. *Worstall,* 129 Ohio St., 596, 196 N. E., 637); and an accident where the defendant fell asleep while driving a motor vehicle (*Collins, a Minor,* v. *McClure,* 143 Ohio St., 569, 56 N. E. [2d], 171).

"In all the foregoing instances in which the doctrine has been applied by this court, it is significant that the agency or occurrence involved represented a dangerous threat of serious injury or death.

"The doctrine of *res ipsa loquitur* was also referred to by its present label and applied in *East Liverpool City Ice Co.* v. *Mattern,* 101 Ohio St., 62, 127 N. E., 408. The facts of that case

are strongly reminiscent of the facts in the famous case of *Rylands* v. *Fletcher,* L. R., H. L., 3 Eng. & Irish App. Cas., 330, holding the defendant liable, even where without fault, for damage caused by escape from his premises of water collected thereon. The existence of such common-law precedents may have led this court in the *Mattern case* to apply the *res ipsa loquitur* doctrine, instead of imposing liability without fault, even where there was no dangerous threat of serious injury or death from the use of the instrumentality or from the occurrence involved. Cf. *Langabaugh* v. *Anderson,* 68 Ohio St., 131, 67 N. E., 286, 62 L. R. A., 948.

"Apparently, the only other instance in which this court has applied the doctrine of *res ipsa loquitur,* where the agency or occurrence involved did not represent at least a dangerous threat of serious personal injury, is *Worland* v. *Rothstein,* 141 Ohio St., 501, 49 N. E. (2d), 165 (sponge and water dropped onto plaintiff on public street by window washer on defendant's premises). Cf. *J. Livingston & Co.* v. *Streeter,* 114 Ohio St., 144, 150 N. E., 734. Here again, we have instances where some courts have imposed an absolute duty on abutting landowners not to permit upon their premises activities which will result in the fall of objects onto those lawfully traveling on a public highway. 25 American Jurisprudence, 823. See *Nagle* v. *Brown,* 37 Ohio St., 7. Cf. *Richman Bros.* v. *Miller,* 131 Ohio St., 424, 3 N. E. (2d), 360. These holdings may have led this court to apply the *res ipsa loquitur* doctrine in the *Worland case.*"

The court said also, at page 509, that decisions in which the application of the doctrine had been refused on the ground that the accident did not occur "under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed," involved instrumentalities or occurrences which did not represent dangerous threats of serious injury or death, even though the relationship between the parties was that of passenger and common carrier, citing *Mansfield Public Utility & Service Co.* v. *Grogg,* 103 Ohio St., 301, where plaintiff's heel caught in slots of trolley floor, and *Cleveland Ry. Co.* v. *Sutherland,* 115 Ohio St., 262, where a small piece of glass punched out of the defendant's streetcar window fell on plaintiff.

Since the Supreme Court decided the *Soltz case,* the court has decided other cases involving the *res ipsa loquitur* doctrine. The first of these, *Feinberg* v. *Hotel Olmsted Co.,* 152 Ohio St., 417, involved an accident caused by a falling elevator. Plaintiff, operator of a cartage business, had obtained consent of the hotel company's employees to use an elevator to move a large refrigerator door and frame out of the hotel for an independent contractor who was installing a new refrigerator for the hotel. Plaintiff and an employee of the independent contractor loaded the refrigerator door and frame on the elevator. No employee of the hotel company was involved. The court held that the defendant hotel company did not have exclusive management and control of the elevator at the time of the accident.

The Supreme Court held the doctrine applicable in the case of *Manker* v. *Shaffer,* 161 Ohio St., 285, wherein the court held:

"Where a motor vehicle and the operation thereof are exclusively within the control of the driver, and a paying passenger in such motor vehicle is injured when the vehicle runs off the road, and the accident is unexplained and is one which is not commonly incident to the operation of a motor vehicle, the occurrence itself raises a permissible inference of negligence on the part of the driver and presents a question for submission to the jury in an action against the driver based on such injury."

The Supreme Court held the doctrine not to apply to the facts in *Krupar* v. *Procter & Gamble Co.,* 160 Ohio St., 489, wherein the court, in paragraphs two and three of the syllabus, held:

"2. In a negligence action if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant. (Paragraph three of the syllabus in the case of *Gedra* v. *Dallmer Co.,* 153 Ohio St., 285, approved and followed.)

"3. Such doctrine is not applicable where the evidence discloses only that a small piece of wire is found embedded in a partially consumed bar of soap used by the plaintiff, his wife and his guests for a period of eight days after purchase from a retailer who in turn had sometime previously purchased the soap

from the defendant manufacturer in another city and had had it shipped to the retailer's warehouse for storage until needed."

In the case of *Cleveland Ry. Co.* v. *Sutherland,* 115 Ohio St., 262, the court quoted this statement from 29 Cyc., 624, that "the maxim *res ipsa loquitur* relates merely to negligence prima facie and is available without excluding all other possibilities, but it does not apply where there is direct evidence as to the cause, or where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence."

Applying the holding of the Supreme Court in the case of *Fink* v. *New York Central Rd. Co., supra,* we must first determine whether a jury could reasonably conclude from the evidence that the mattress cover which struck the plaintiff was under the exclusive management and control of defendant and that it came from the sixth floor of defendant's warehouse. These conclusions of fact may be established by either direct or circumstantial evidence and such reasonable and logical inferences which may be drawn therefrom.

There is no direct evidence that (1) the mattress cover was permitted to fall upon plaintiff by an employee of defendant and (2) that such employee was acting within the course of his employment.

Plaintiff testified, that when the two boys came from defendant's premises and retrieved the mattress cover, they were asked why they threw the package out. Defendant's objection to the question was sustained and this answer was proffered: "The answer of the boys would be that we are short handed and the package went out the window instead of going in the bin, because we are understaffed and had to work this way." However, no error has been assigned to the court's ruling and the proffered answer cannot be considered.

Defendant contends that the necessary inference of course of employment must be predicated upon an inference that the mattress cover was permitted to fall from its premises upon the plaintiff by defendant's employees.

In *McDougall* v. *Glenn Cartage Co.,* 169 Ohio St., 522, relied upon by defendant, it is said, at page 524:

"* * * proof of ownership of an instrumentality is not enough to permit an inference that the one operating it at a given time was the owner's employee or agent acting for or on behalf of his employer or principal."

It is said further, on page 526, that "By the decided weight of authority, it is established that, where a commercial vehicle traveling on a highway bears the name of a person, a rebuttable presumption or inference arises not only that such person owns it but that it is being operated in his business," and on page 524, that "as to commercial vehicles is different because *ordinarily the use of such vehicles is in the owner's business*. 5 American Jurisprudence, 871, Section 664." (Emphasis ours.)

The defendant, in the instant case, is operating a commercial enterprise, and ordinarily, under the circumstances shown, the mattress cover would be handled only by employees of defendant acting in the course of their employment.

It is as reasonable to infer from the evidence in this case that the mattress cover was permitted to fall upon plaintiff's head from an area controlled by the defendant by employees of defendant acting in the course of their employment as it was to infer in the *McDougall case, supra,* that a truck bearing the name of the defendant cartage company with distinctive markings with unidentified I. C. C. and P. U. C. O. permits and numbers, without direct evidence of ownership, was owned by the defendant therein and was operated in that defendant's business. In that case, there was no direct evidence that the permits on the vehicle involved were those of the defendant and the doctrine of *res ipsa loquitur* was not involved.

Plaintiff's case finds support also in *Hurt* v. *Charles J. Rogers Transportation Co.,* 164 Ohio St., 329, in which it was held that an inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury, and that it is permissible for a jury to draw several conclusions of fact from the same set of facts and equally permissible for a jury to use a series of facts and circumstances as a basis for ultimate findings or inferences. See, also, *City of Cleveland* v. *McNea,* 158 Ohio St., 138.

Upon the direct and circumstantial evidence and the paral-

lel inferences which could be reasonably and logically drawn therefrom, a jury could reasonably conclude that the defendant had the exclusive management and control of the mattress cover which struck the plaintiff's head. *State* v. *Martin,* 164 Ohio St., 54.

The next question is, did "the accident occur under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed," as required by the rule laid down in the case of *Fink* v. *New York Central Rd. Co., supra.*

Construing the direct and circumstantial evidence adduced herein and the parallel inferences reasonably and logically flowing therefrom most strongly in plaintiff's favor and applying the rules laid down by the Supreme Court in *Soltz* v. *Colony Recreation Center, supra,* we conclude that the trial court, when ruling on defendant's motions for a directed verdict and for judgment *non obstante veredicto,* was warranted in determining that the circumstances here were such as to require a high degree of care on the part of defendant and its employees; that judicial notice could be taken that such an accident does not happen in the ordinary course of events unless there is negligence; that the accident was more probably the result of a negligent than of some other cause; and that the rule of *res ipsa loquitur* was applicable.

We conclude that there is substantial evidence in the record from which it might reasonably be concluded that defendant was guilty of negligence proximately causing plaintiff's injury and that plaintiff has made a case fixing liability against defendant which called for the defendant to meet the case so made, if it could, by showing that the mattress cover was not owned by it, was not in its exclusive management or control at the time of the injury, or that, at the time of the injury, it was not being handled by its employees acting within the scope of their employment. Certainly such information would be peculiarly within the defendant's possession.

We see no injustice in calling upon defendant to explain how this accident happened. In the absence of an explanation, it was within the province of the jury to determine the weight which they wished to give to the evidence and inferences under the doctrine of *res ipsa loquitur.* Finding that the doctrine was

applicable, we likewise find that the Common Pleas Court properly overruled defendant's motions.

Finding no error in the record prejudicial to the rights of the defendant, the judgment is affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and KERNS, J. concur.