ROBERT L. YOUNG v.
DR. CARL G. CASPERS AND OTHERS.

249 N. W. 2d 713.

January 7, 1977—No. 46349.

---

*Singer & Singer* and *David A. Singer,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland,* and *O. C. Adamson II,* for respondent.

*Duane M. Peterson, Gordon W. Schumaker,* and *Monte M. Miller,* for Minnesota Trial Lawyers Association, amicus curiae, seeking reversal.

Considered and decided by the court en banc.

TODD, JUSTICE.

Dr. Carl G. Caspers performed an operation on Robert L. Young to relieve a back condition that was causing him some discomfort. While removing a surgical knife after making an incision, Dr. Caspers noticed that the tip of the knife was missing. The missing tip was not located and had to be removed by subsequent surgery. After the jury had returned a verdict for Young, the trial court ordered a new trial on the grounds that it had improperly submitted a res ipsa loquitur instruction. We reverse and reinstate the verdict.

In March 1971, Young saw Dr. Caspers for treatment of a back injury which resulted from an incident that occurred in 1969. Young had consulted other physicians without achieving significant improvement in his condition. Young was not working and Dr. Caspers instituted a conservative treatment program designed to restore Young as a productive member of society. Dr. Caspers' examination also revealed that Young suffered from emotional problems and Dr. Caspers told Young he was not sure he could help him.

On April 19, 1971, Young entered St. Mary's Hospital where a spinogram indicated that surgery could be helpful in alleviating Young's back condition. On April 23, 1971, Dr. Caspers performed a laminectomy. The patient was anesthetized and placed face down on the operating table. The doctor utilized a No. 15 Bard-Parker blade, manufactured by defendant Bard-Parker Manufacturing Company, Inc. (Bard-Parker), to make the initial incision. The cut was made across the posterior longitudinal ligament in order to obtain access to the vertebral area.

Dr. Caspers described the ligamentous tissue involved as an "in-between structure" possessing the qualities of firmness and continuity but not hardness. He testified the cut was vertical and required only a slight downward pressure. He further testified that "the blade is turned either on top or on the ligament to excise a little bit on the cross pattern to open up the ligament."

As he removed the blade from the incision, Dr. Caspers im-

mediately noticed that the tip was missing. The operable area was explored to locate the blade fragment without success. Presuming that the blade fragment had dropped into the intervertebral space, Dr. Caspers completed the surgical procedure. X-rays were taken which indicated the retroperitoneal area as the fragment's ultimate resting place. After viewing the X-rays, Dr. Caspers consulted with another surgeon regarding the location of the blade tip. Both physicians agreed that the blade fragment was resting in a "silent zone" where it would not physically harm the patient. Since the blade could no longer be reached through the back, Dr. Caspers decided to terminate the operation.

Following the surgery, Dr. Caspers discussed Young's condition with a psychiatrist who was also treating the patient. After several conferences, a collective decision was reached by the physicians not to inform Young about the implanted blade tip because of his emotional instability. However, after several months, due to the continuation of Young's emotional problems, as well as his prolonged recovery period, removal of the blade was deemed medically appropriate.

Thus, on January 7, 1972, Young was finally informed of the implanted blade and subsequently elected surgery for its removal. The second surgical procedure was performed, the blade removed, and Young made an uneventful recovery. Soon thereafter, Young commenced an action for damages against Dr. Caspers, St. Mary's Hospital, and Bard-Parker.

At trial, Young introduced expert testimony through Professor Fulton Holtby, a professional registered engineer and associate professor of mechanical engineering with eminent qualifications in the field of metallography, concerning the physical characteristics of the broken blade. Professor Holtby had conducted several tests on the No. 15 Bard-Parker blade employed by Dr. Caspers during the surgical procedure on Young and rendered his professional opinion that (1) there was no evidence of metal fatigue or material defect in the broken blade, and (2) the blade was broken by a bending movement or a combination

of a bending and twisting movement. Professor Holtby was unable to determine the amount of force necessary to break the blade because of the difficulty of measuring the combined forces of bending and twisting.

Dr. Caspers was called for cross-examination as part of Young's case. He testified that he had performed numerous operations in his career, many of which involved incisions into ligamentous tissue, without once breaking a blade. He denied exerting any other force to the blade other than laterally and stated that the identical procedure was followed while operating on Young as in any other laminectomy.

After plaintiff completed the presentation of his evidence, defendants St. Mary's Hospital and Bard-Parker each moved for a directed verdict, which motions were not resisted by plaintiff or by Dr. Caspers.[1] The motions for directed verdicts were granted and judgment of dismissal entered. Dr. Caspers rested his case without offering any direct evidence. The trial court, although indicating some doubt, submitted the case to the jury, accompanied by a res ipsa loquitur instruction as requested by plaintiff. Dr. Caspers did not object to the giving of the instruction. Specifically, the trial court instructed the jury in part as follows:

"Now, when an accident is such that it would ordinarily not have happened unless someone had been negligent, and if the thing which caused the injury is shown to be under the exclusive control of the defendant, then you are permitted to infer from the accident itself and the circumstances surrounding it that the defendant was negligent. Before you are permitted to make this inference, however, you must find all of the following to have been proved.

---

[1] Plaintiff had resisted an earlier motion made after Professor Holtby's testimony was completed on the grounds that Dr. Caspers' testimony would permit an inference that the blade was not thick enough. The evidence produced did not permit such an inference.

"First, that the Plaintiff, Mr. Young, suffered injuries to himself from the event we are talking about.

"Second, that the accident was of a kind which ordinarily does not happen in the absence of someone's negligence.

"Third, that the instrumentality that we are talking about was in the exclusive control of the defendant at the time that the negligent act, if any, must have happened.

"Finally, that the injury or the condition resulting in the injury was not due to the conduct of the plaintiff himself.

"I instruct you that the mere fact that an accident has happened does not, of course, in and of itself * * * mean anyone has necessarily been negligent.

"We are going to be talking about cause, sometimes we say cause, sometimes we say direct cause, and sometimes we say proximate cause, and I instruct you that the law is that if a person—if an act is one which a person * * * in the exercise of reasonable care could have anticipated was likely to result in injury to another, then he is responsible for any injuries which proximately result from his conduct, even though he could not have anticipated the particular injuries which actually did follow.

"Consequences, which follow in an unbroken sequence without any intervening efficient interrupting cause from the original negligent act are the natural, direct and proximate results of that act, and for those consequences the original wrongdoer is responsible even though he could not have foreseen the particular result which actually followed.

"Sometimes instead of that longer definition, we simply say that a direct cause is a cause which had a substantial part in bringing about the injury which followed."

The jury returned a verdict for Young in the amount of $10,000. Thereafter, the trial court granted Dr. Caspers' motion for a new trial, holding that it was a fundamental error of law to instruct the jury on res ipsa loquitur in this case. Young appeals this order, seeking reinstatement of the verdict of the jury.

The sole issue on appeal is the propriety of the res ipsa loquitur instruction.

The trial court's order for a new trial is accompanied by an exhaustive memorandum. An examination of the memorandum discloses that it is based on certain basic premises with which we do not agree. Initially, the trial court analyzed and segregated the alleged negligent acts and stated:

"Considering plaintiff's claims which must be measured against these standards, it is manifestly clear that plaintiff's assertions of professional malpractice rests upon three separate though related allegations of negligence: 1) negligence and causing the blade to break, 2) negligence involved in the blade fragment's migration, and 3) negligence in permitting the blade to remain in the plaintiff at the conclusion of the surgery."

Based on this analysis, the trial court concluded:

"The only and obvious reason the blade could migrate was the defendant's decision to finish excising the disc material before retrieving the blade fragment. Had the surgeon insisted upon the retrieval before continuing, the untoward result in this case would not have obtained.

"Thus, the focal point upon which this case hinges is whether the defendant's decision to continue without the blade's retrieval and its possible migration necessitating its abandonment, * * *."

Thus, by separating the events, the trial court subjected each of the alleged negligent acts to an individual analysis. Through this process, the applicability of the doctrine of res ipsa loquitur was also determined on an individual basis.

As opposed to the trial court's analysis, we view the breaking of the blade to be the "cause of the injury." We conclude that the focal point of consideration in this case is the breaking off of the tip of the blade from the scalpel.[2] This was the operative

---

[2] We are cognizant that the plaintiff in presenting his case argued not only the alleged negligence causing the breaking of the blade, but also argued negligence in continuing the operation and in allegedly causing

event without which the blade would not have migrated and remained in Young. The decision of Dr. Caspers to proceed with the laminectomy after the breaking of the blade and its subsequent migration to a "silent zone" in the retroperitoneal area are links in a related chain of events without a sufficient intervening cause from the original alleged negligent act. Thus, our focus in determining the propriety of submitting the case to the jury, accompanied by a res ipsa loquitur instruction, is on the singular act of the breaking of the blade.

1. ,The general doctrine of res ipsa loquitur was succinctly summarized in Holten v. Parker, 302 Minn. 167, 173, 224 N. W. 2d 139, 144 (1974):

"* * * There are three requirements for the application of the doctrine under our decisions. They are as follows:

" '* * * (1) Plaintiff must have been injured by an apparatus or instrumentality whose nature is such that injury is not ordinarily to be expected in the absence of negligence; (2) at the time of the injury, both [instrumentality] and user must have been in the exclusive control of the defendant; and (3) the injurious condition or occurrence must not have been due to any voluntary action on the part of plaintiff.' Johnson v. Coca Cola Bottling Co. 235 Minn. 471, 476, 51 N. W. 2d 573, 576 (1952)."

Since the patient was unconscious when the alleged negligent act occurred, it is conceded that the occurrence was not due to any voluntary or contributory act by Young.

As to the element of exclusive control by defendant, Dr. Caspers' testimony seems to clearly establish the fact he was in exclusive control of the surgical knife at the time it broke. By his own admission, the blade fractured as he was manipulating a surgical scalpel while making the first incision in a laminectomy

---

the migration of the blade tip to the abdominal cavity. The allegation of specific acts of negligence does not defeat the application of the res ipsa rule. Kleinman v. Banner Laundry Co. 150 Minn. 515, 519, 186 N. W. 123, 125 (1921).

procedure. Thus, after examining the record we conclude that the element of exclusive control was fully satisfied in this case.

Finally, we must determine whether the breaking of a surgical blade is the type of event which does not occur ordinarily in the absence of someone's negligence. When considering this element, it is important to remember that the possibility of metal fatigue or material defect of the blade were eliminated as potential alternative causes. Plaintiff employed the expert opinion of Professor Holtby together with the testimony of Dr. Caspers to satisfy this requirement. Professor Holtby stated that, in his opinion, the breaking of the blade occurred because of bending ·or a combination of bending and twisting movement. The only ·evidence introduced to dispute this opinion was the testimony ·of Dr. Caspers that he did not bend or twist the surgical blade. However, Dr. Caspers also testified that accepted surgical practice dictates that the initial incision in a laminectomy procedure be a straight downward cut involving very little pressure. Thus, when the record in this case is examined in its entirety we are inescapably led to the conclusion that the breaking of the surgical blade is the type of event which would not have occurred except for someone's negligence.

2. Having satisfied the three general requisites for an instruction on res ipsa loquitur, we must also examine several general principles of the doctrine to determine their applicability to the case at hand. In Hestbeck v. Hennepin County, 297 Minn. 419, 424, 212 N. W. 2d 361, 365 (1973), the rationale for the doctrine in medical malpractice cases was described as follows:

" 'The thing or situation speaks for itself' is usually abbreviated by using the Latin phrase 'res ipsa loquitur.' It is merely another way of characterizing the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence. Applying this doctrine and instructing a jury concerning it in an appropriate case are designed to assist plaintiff in discharging his obligation to make out a prima facie case of negligence and to aid the jury in performing its fact-

finding function. Its effect is to place upon the physician and medical personnel, who have the advantage of knowledge of what was done and its significance—knowledge customarily denied the patient—, the burden of going forward with rebutting evidence to satisfactorily and convincingly explain away those facts and circumstances which otherwise may reasonably support an inference that someone was negligent. It is obvious that the stronger the inference of negligence raised by the circumstantial evidence, the more difficult it is to disprove."

In an earlier case, Kleinman v. Banner Laundry Co. 150 Minn. 515, 518, 186 N. W. 123, 124 (1921), we stated that the legal effect of res ipsa loquitur is to create an inference of negligence:

"* * * Whether the res ipsa doctrine, which permits an inference of negligence from the fact of an explosion, should apply is largely a question of how justice in such cases is most practically and fairly administered. There is nothing legally illogical in permitting the inference to be drawn. Usually the party injured is without information upon which he may with certainty allege the exact cause, and is without direct proof. Perhaps the exact cause is incapable of ascertainment. The actual proof, if any, is with the party having the management of the instrumentality. These are practical considerations. We think the jury should have been permitted to draw an inference of negligence of the laundry company from the occurrence of the explosion."

The trial court interpreted the effect of the doctrine differently in the present case. The trial court, in its memorandum, stated that when the physician remains as the only party defendant the res ipsa instruction, rather than creating an inference of negligence, has the effect of shifting the burden of proof on the remaining defendant. It concluded that to allow res ipsa loquitur against the single remaining defendant was, for practical purposes, tantamount to directing a verdict against Dr. Caspers. Thus, the court stated that since res ipsa loquitur alters the burden of proof rather than simply creating an inference, its use

in this case is unfair, inappropriate, and inconsistent with legal precedent in this state.

We cannot agree with this conclusion. As indicated previously, Dr. Caspers is the only possible negligent person in this case. We are unable to perceive any reason why Young should be denied the use of this doctrine merely because there is only one remaining defendant. Furthermore, the evidentiary nature of the res ipsa doctrine in Minnesota was set forth in Kleinman v. Banner Laundry Co. 150 Minn. 515, 518, 186 N. W. 123, 124, as:

"It is not necessary to discuss particularly the effect as proof of the application of the res ipsa maxim. Our holdings are not that it puts the ultimate risk of nonpersuasion upon the defendant. While an occasional expression may be found indicating such view, our holdings are that the application of the rule does not shift the ultimate burden of negativing negligence before the jury upon the defendant, but, in the ordinary case, and without saying that a particular case may not compel the direction of a verdict one way or the other, permits the jury to draw an inference of negligence from the result. Keithley v. Hettinger, 133 Minn. 36, 157 N. W. 897, Ann. Cas. 1918D, 376; Holt v. Ten Broeck, 134 Minn. 458, 159 N. W. 1073, Ann. Cas. 1918E, 256. In both of these cases reference is made to Sweeney v. Erving, 228 U. S. 233, 240, 33 Sup. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905, where Justice Pitney says that the meaning of res ipsa loquitur is 'that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff.' "

See, also, Hestbeck v. Hennepin County, 297 Minn. 419, 212 N. W. 2d 361; Holten v. Parker, 302 Minn. 167, 224 N. W. 2d 139; Rule 43.06, Rules of Civil Procedure.

Thus, res ipsa loquitur only creates a rebuttable inference of negligence which the jury can choose to accept or reject. However, once the requisites of the doctrine are satisfied, as they were in this case, the instruction must be given.

The trial court analyzed many "broken instrument" cases. We have reviewed these cases and find them inapplicable to this case and factually distinguishable.

3. Finally, we must consider Dr. Caspers' argument that plaintiff's claim must be denied because of his failure to introduce any expert medical evidence to support his claim of professional malpractice. In Hestbeck v. Hennepin County, 297 Minn. 419, 424, 212 N. W. 2d 361, 365, we stated with approval the general rule stated in Prosser, Torts (4 ed.) § 39:

"There are, however, some medical and surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care."

This is such a case. Expert medical opinion could add nothing to the opinion of Professor Holtby as to the strength of the blade and the cause of its breaking. The jury was free to accept or reject Professor Holtby's opinion. They obviously accepted it and did not find Dr. Caspers' testimony persuasive that he had neither bent nor twisted the blade. Dr. Caspers elected not to offer any other evidence and he was not required to do so. However, the failure to introduce any rebuttal evidence was his own decision, and he did so at the peril of an adverse verdict which did occur. See, Heyduck v. Elder & Johnston Co. 116 Ohio App. 224, 22 Ohio O. 2d 61, 187 N. E. 2d 615, 97 A. L. R. 2d 1422 (1962).

For the reasons stated herein, the order of the trial court for a new trial is reversed and the matter remanded with instruc-

tions to reinstate the verdict of the jury and enter judgment for plaintiff.

Reversed and remanded.

MR. JUSTICE OTIS and MR. JUSTICE KELLY took no part in the consideration or decision of this case.