JULIUS K. HOFFMAN AND ANOTHER v.
DR. AMES W. NASLUND AND OTHERS.

144 N. W. (2d) 580.

August 12, 1966—No. 39,770.

522

*Maun, Hazel, Green, Hayes, Simon & Aretz, Merlyn C. Green,* and *William Eckholdt,* for appellants.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *M. J. Coyne,* for respondents.

NELSON, JUSTICE.

This is an appeal from the judgment of the district court entered pursuant to the trial court's direction of a verdict for the defendants at the

close of plaintiffs' case. The case involves a suit by Julius K. Hoffman and his wife, Elizabeth Hoffman, for malpractice against Dr. Ames W. Naslund and his partners, who specialize in roentgenology and radiology for the purposes of diagnosis and treatment of disease.

In April 1955 Mrs. Hoffman was found to have a tumor in her rectum. On May 4, 1955, Dr. Lloyd Sherman performed what is known as a "pull through" operation, which in effect removed her rectum and pulled part of her colon down, attaching it to the anus, so as to form a substitute rectum. The rectum was thus replaced by what is termed a sigmoid colon, which was about 50 percent smaller in diameter than the replaced rectum. This operation appears to have been successful in that the tumor was removed, thus preventing malignancy. She was given proctoscopic examinations by Dr. Sherman approximately every 6 months during the postoperative period to make sure that another tumor did not appear. In August 1957 Mrs. Hoffman had a routine barium enema X-ray study at St. Barnabas Hospital, performed by defendant Dr. Phillip Olson, a partner of Dr. Naslund. There was no evidence of a recurrent tumor and nothing of medical concern was found.

On August 18, 1959, Dr. Sherman noted some rectal bleeding and injected a solution to stop it, with apparent success. On September 27, 1959, Dr. Sherman told Mrs. Hoffman to make an appointment with Dr. Naslund for another X-ray study. Dr. Sherman gave her a slip which he had signed, addressed to Drs. Naslund and Olson, stating that the patient had had a "pull-through procedure" for cancer of the rectum in May 1955, and adding a cautionary note, "Please use bardex with care." This admonition may well have indicated that Dr. Sherman had some misgivings about applying the bardex test to his patient's rectum as then rebuilt and constituted.

Mrs. Hoffman made an appointment with Dr. Naslund for October 13, 1959, and gave the slip with the notations on it to the receptionist. She picked the slip up and took it with her when she left, since the receptionist had left it lying on her desk, saying that they had their own instructions for her. Mrs. Hoffman next appeared at defendants' offices on October 13 for her X-ray treatment. Defendants' longtime employee

in the X-ray room, Mrs. Adeline McFaden, after placing Mrs. Hoffman in the proper position on a table, and under the instruction of Dr. Naslund, inserted an adult size bardex tube into her rectum and inflated a small balloon attached to it. Barium was inserted and X rays were taken. The bardex tube was then taken out and Mrs. Hoffman went to the bathroom to discharge the enema. She made no complaints upon her return to the X-ray room of encountering any difficulty. She was again placed on the table for air contrast studies with the aid of a regular enema tube. Air was pumped into the rectal area after which she complained of feeling a sharp pain which came in intervals. The air contrast X rays took only a short time, after which she was directed into the bathroom to expel the air. Mrs. Hoffman didn't feel well during this period, but she got dressed and went home. She continued feeling sick for several days and finally went to see Dr. Sherman on October 19, 1959. He sent her to St. Barnabas Hospital upon discovering that she had a 2-inch tear in her "rectum." For about 10 days Mrs. Hoffman was treated with antibiotics, but to no avail. On November 3, 1959, a diversionary colostomy operation was performed by Dr. Sherman. This involved opening up the front of her stomach and bringing out a loop of bowel through the opening to act as an outlet for fecal material and to divert it from the infected tear. This procedure was necessary until July 1961 when the abscess finally healed and Dr. Sherman closed the colostomy, and again connected her colon to the anus as he had previously done. She remained in the hospital for 19 days. She continued to have trouble with her bowel control and developed a hernia in the region where the colostomy had been performed.

Plaintiffs contend that Mrs. Hoffman's problems have resulted from the tear in her colon which they allege was caused by the negligent use of the bardex tube when the X rays were taken in Dr. Naslund's offices. They assign as error the trial court's granting of a directed verdict and contend they were entitled to have their claims passed upon by an impartial jury. Plaintiffs further contend that they are entitled to a new trial because of the following claimed errors of law:

(1) The trial court's refusal to permit plaintiffs to adversely exam-

ine defendants on matters involving their judgment, knowledge, and opinion as experts.

(2) The court's refusal to permit plaintiffs to cross-examine Dr. Sherman on the basis of surprise.

(3) The court's refusal to permit plaintiffs' counsel to elicit from the attending surgeon an opinion, based upon a hypothetical question, as to the cause of the tear in Mrs. Hoffman's colon.

(4) The exclusion of certain colored photographs which showed the actual appearance of Mrs. Hoffman's colostomy prior to the subsequent surgery in which it was removed.

■ Plaintiffs argue that they repeatedly sought to question defendants, whom they called for adverse examination, concerning matters involving their knowledge, experience, judgment, and opinion, but that objection thereto was repeatedly sustained by the trial court on the ground that to permit such inquiry would enable plaintiffs to use defendants' testimony as expert witnesses to assist plaintiffs in establishing their case. What the trial court did in effect was to sustain objections to questions whereby plaintiffs' attorney sought to elicit expert medical opinions from defendants while they were on the witness stand for the limited purpose of cross-examination under the rules.

This court has heretofore ruled on that issue in the case of Ericksen v. Wilson, 266 Minn. 401, 123 N. W. (2d) 687. The plaintiffs in the Ericksen case contended that the trial court had erred in unduly restricting their cross-examination of the defendant, an oral surgeon. Plaintiffs also argued that they were not allowed to go into the intricacies of the defendant's treatment and therefore were unable to show improper diagnosis, improper maintenance of records, and improper treatment; were not allowed to place the dentist's own standards in evidence; and were prevented from having a fair trial by the court's unduly abridging their right to fully cross-examine defendant as an adverse witness. We held, however, that in medical malpractice actions a plaintiff will not be permitted under the guise of cross-examination under the rules to go so far as to compel expert testimony from the defendant to prove a charge of malpractice without properly calling other medical witnesses. Unless

this court should be presently inclined to overrule what it squarely held on this question in the Ericksen case, the trial court's ruling must be upheld.

No offers of proof were made by plaintiffs' counsel in the instant case to disclose or indicate the type or degree of proof that they were seeking to establish by calling Dr. Naslund as an adverse witness. We have carefully considered plaintiffs' argument and the cases they cite advocating a change from the ruling made by this court in Ericksen v. Wilson, *supra*. Since the jurisdictions on either side of the question are still roughly equal we are not yet inclined to take a position contrary to the language contained in the Ericksen case. See, Annotation, 88 A. L. R. (2d) 1186.

■ Plaintiffs' counsel submitted a hypothetical question to Dr. Sherman, called as a medical witness by plaintiffs, on the basis of which he was asked for his opinion as to how the tear occurred. He answered that he did not have an opinion on this, after which the court did not permit further questioning as to the cause of the tear. Plaintiffs' counsel was nevertheless thereafter permitted to ask whether he had an opinion, based upon the hypothetical question, as to when the tear occurred. Dr. Sherman then gave as his opinion —

"* * * the only thing I can say is this certainly must have occurred several days prior to my inspection on the 19th, I believe, of October because there was evidence of a purulence at the edges of the rent. Also, there was presence of pus which takes this whole process several days to develop. That is as much as I feel I am qualified to state as far as direction, in other words, it was not a fresh rent.

"Q. Are you able to bring it any closer to that in point of time, that is, so many days before or weeks before?

"A. I don't honestly know, one couldn't. Certainly by appearance *it occurred on* — must have occurred several days prior which is as much as I can say."

Plaintiffs' counsel then requested permission to cross-examine Dr. Sherman on the basis of surprise, claiming that he had said earlier that, based on his knowledge of the subject matter, the patient, and the pro-

cedures involved, it was his opinion that the tear had occurred because the bardex balloon had been inflated to the point of causing pressure beyond the capacity of the patient's colon to withstand. The court refused to allow cross-examination of Dr. Sherman. We are unable to agree with plaintiffs' claim that this was an abuse of· discretion on the part of the trial court for two reasons. First, plaintiffs had not taken a deposition from Dr. Sherman, so there was no way of showing a prior inconsistent statement other than counsel's own word. Witort v. Chicago & N. W. Ry. Co. 170 Minn. 482, 212 N. W. 944, cited by plaintiffs as controlling, is distinguishable because there had been a deposition given by the witness in that case. Second, the trial court felt in the instant case that there were too many contingencies already suggested and made a part of the testimony to allow Dr. Sherman as an expert witness to state what caused the injury since he had disqualified himself as an expert witness.

Plaintiffs also question the propriety of the trial court's ruling on plaintiffs' hypothetical question seeking to elicit from Dr. Sherman an opinion as to the cause of the tear. The trial court required that there be included, in the question Mrs. Hoffman's prior history and the testimony of Mrs. McFaden concerning the instructions given her by Dr. Naslund, and her statements as to how the bardex and enema tubes were inserted. Plaintiffs contend that this is controverted evidence which the jury might reasonably find not to be true and that therefore it was unfair to require its inclusion. As we see it, that objection to the trial court's ruling became unimportant and moot after Dr. Sherman clearly· stated that he had no opinion as to what caused the tear in Mrs. Hoffman's colon. At any rate plaintiffs' counsel was otherwise given full opportunity to elicit information from Mrs. Hoffman as to her condition, past and present, leaving slight support, if any, for the claim that the trial court's ruling constituted prejudicial error.

Dr. Sherman testified that he had seen Mrs. Hoffman on August 18 and September 27, 1959, at which times she was having some rectal bleeding. On August 27 a proctoscopic examination was performed, from which he concluded the bleeding was caused by prolapse of the mucous membrane. He then urged her to have her annual X-ray exam-

ination. The testimony indicated that defendants had performed similar studies upon a great number of patients presenting similar difficulties in past years, and Dr. Naslund unequivocally stated that the period during which Mrs. Hoffman was being X-rayed in his office was not the most probable time of the occurrence of the tear.

Defendants argue that plaintiffs' claim and theory of malpractice is unsupported in two distinct respects. First, that there is no evidence, direct or circumstantial, which preponderates in favor of plaintiffs' theory that inflation of the bardex balloon caused the tear in Mrs. Hoffman's colon; and, second, that there is no evidence that the studies as carried out and the use of the balloon was not in conformance with community standards so that its use could be found by a jury to constitute malpractice. Defendants argue that plaintiffs seek to establish their claim primarily by their own explanations, interpretations, and analysis of a number of X rays, but that this amounts only to speculative argument in view of their failure to call a roentgenologist to interpret the X rays.

Essentially, it is plaintiffs' claim that an unintended result, ipso facto, creates a jury question as to a physician's alleged malpractice. They apparently seek to invoke the res ipsa loquitur rule, contending that Minnesota has adopted that rule in malpractice cases.

A simple statement of the doctrine of res ipsa loquitur appears in Prosser, Torts (3 ed.) § 39, p. 218:

"The conditions usually stated in America as necessary for the application of the principles of res ipsa loquitur were derived originally from the first edition of Wigmore on Evidence, which appeared in 1905. They are as follows: (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. * * *

"The requirement that the occurrence be one which ordinarily does not happen without negligence is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to an inference that someone must have been negligent."

It might well be that if all the necessary elements are present, an untoward result might provide circumstantial evidence that there was a negligent act which produced the result; however, if an act is known and is thus subject to direct proof, the rule of res ipsa loquitur may not be invoked for the purpose of determining whether that act was negligent. Under the latter circumstances the evidence of the act is properly placed before the jury, which, calling upon their general experience, must determine whether or not the reasonably prudent person would have committed such act. If such experience is insufficient to enable the jury to judge the quality of the act, then it is necessary that the jury have the aid of expert testimony in order to form a judgment of negligence or of due care.

In the ordinary malpractice case the standard applied involves scientific knowledge that must be defined by expert medical witnesses. Harju v. Allen, 146 Minn. 23, 177 N. W. 1015; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; Miller v. Raaen, 273 Minn. 109, 139 N. W. (2d) 877. Thus, unless a jury could conclude from their own knowledge that the result was due to the negligence of the defendant, there must be expert medical testimony as to the reason for the result. Where the preceding proposition applies, the doctrine of res ipsa loquitur cannot apply.

The record in the case at bar does not establish the type of malpractice case that a jury could consider without the aid of medical expert witnesses. The uses of the barium enema studies and the air contrast studies undertaken by Dr. Naslund at the suggestion of Dr. Sherman are not within the knowledge of a lay person. The case is not analogous to the case where metal clips were left in the body after surgery, Fowler v. Scheldrup, 166 Minn. 164, 207 N. W. 177; or where there was a failure to remove a sponge after surgery, Baer v. Chowning, 135 Minn. 453, 161 N. W. 144; or where a burn resulted from the improper administration of an X ray, Holt v. Ten Broeck, 134 Minn. 458, 159 N. W. 1073, and Jones v. Tri-State T. & T. Co. 118 Minn. 217, 136 N. W. 741, 40 L. R. A. (N. S.) 485; or where a chemical burn from phenol resulted from the improper application of the chemical, Jensen v. Linner, 260 Minn. 22, 108 N. W. (2d) 705.

A person's colon could conceivably become torn from other causes than the use of a bardex balloon in the barium studies. Mrs. Hoffman testified that she had carefully followed all the pre-X-ray instructions as to diet and the taking of laxatives but that she could not remember whether she had given herself the prescribed enema the night before she went to Dr. Naslund's office. The probability is that she did so. There is the possibility that because of her previous condition the procedures carried out in defendants' office might have initiated the tear or reinduced one without any malpractice. Mrs. Hoffman had consulted Dr. Sherman on August 18, 1959, because of bleeding. She was then proctoscoped, a procedure requiring the insertion of a tubelike instrument into the colon. At no time did Dr. Sherman or any other witness testify that the nature of the lesion ruled out prior perforation or state that the tear was the type which would be expected from excessive pressure. There is no testimony that a tear occurred during the barium enema or that if it did, that it would be painless, nor is there any testimony to the effect that the pain which Mrs. Hoffman felt during the air contrast study was an indication that a tear had occurred during the barium study. There is no testimony that the tear could not have occurred while she was evacuating the barium. If a tear in the colon occurred during Dr. Naslund's studies and the taking of the X rays, the record remains without competent proof that it did do so or as to whether it occurred during the barium studies or the air contrast studies, at which time the colon was intentionally expanded by forced air pressure.

The theories of how the injury occurred are insufficient substitution for proof of causation. In a medical malpractice action the plaintiff must prove that the harm resulted from the negligence of defendant rather than from some other cause. Ericksen v. Wilson, *supra.* Thus, if in addition to defendants' alleged negligence there are other probable causes for the occurrence, or if expert testimony shows the cause of the occurrence to be unknown, the doctrine of res ipsa loquitur cannot be applied. It is clear, on the contrary, that the doctrine of res ipsa loquitur permits the inference of a fact from an occurrence when there is no probable cause of the occurrence. That is not the situation here. See Collings v. Northwestern Hospital, 202 Minn. 139, 277 N. W. 910, and Wall-

stedt v. Swedish Hospital, 220 Minn. 274, 19 N. W. (2d) 426, where the rule was reiterated that res ipsa loquitur will not be applied if the occurrence could have happened from causes other than defendant's negligence. See, also, Miller v. Raaen, 273 Minn. 109, 139 N. W. (2d) 877.

In Yates v. Gamble, 198 Minn. 7, 12, 268 N. W. 670, 673, this court said:

"* * * A physician and surgeon is not an insurer of a cure or good result of his treatment or operation. He is only required to possess the skill and learning possessed by the average member of his school of the profession in good standing in his locality and to apply that skill and learning with due care."

It was incumbent on the plaintiffs to establish by competent evidence that the defendants in the application of the barium enema and air contrast studies breached the accepted standards of medical practice in the community. A qualified medical expert should not be asked for his opinion as to whether the treatment or thing done was proper or improper, but rather whether or not it was according to the customary and usual practice of the ordinary skilled and careful practitioners of the same school in the community. The burden of proving the failure of defendants to exercise the degree of skill, care, and diligence required rested upon the plaintiffs. Yates v. Gamble, *supra;* Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564. Stating it another way, it is incumbent upon the plaintiffs to establish that the professional equipment and medication and the procedures used in connection with Dr. Naslund's studies were a breach of the accepted standards of medical practice in the community. See, Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644; Louisell & Williams, Trial of Medical Malpractice Cases, § 8.04. Usually this standard of medical practice must be testified to and defined by expert medical witnesses.

Plaintiffs urge that the court erred in ruling against the admissibility of certain colored photographs. The photographs might have been of some informative value in showing the jury what a colostomy operation involves, but they were not necessarily determinative of the facts which the plaintiffs were bound to prove in order to present a jury issue.

Such photographs would not necessarily be inadmissible because of their being of a gruesome nature. Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091. However, if they should tend to inflame or prejudice the jury (and thus be used in determining whether there was malpractice or not), they should not be allowed. As we see it, the rejection of these photos was not unduly restrictive of plaintiffs' proof. There was plenty of testimony by Mrs. Hoffman as to her experiences and problems with the colostomy and Dr. Sherman fully explained what a colostomy operation was by using a chart or drawing. It is difficult to see where those pictures would really add anything and there might well be the danger that they would inflame and prejudice the jury. In our opinion this matter lay within the discretion of the trial court and the court did not abuse its discretion.

■ In negligence cases, and especially in malpractice cases, proof of causal connection must be something more than consistent with the plaintiffs' theory of how the claimed injury was caused. As was stated in Yates v. Gamble, 198 Minn. 7, 14, 268 N. W. 670, 674, "The burden is on plaintiff to show that it is more probable that the harm resulted from some negligence for which defendant was responsible than in consequence of something for which he was not responsible." A verdict cannot be based upon conjecture as to the existence of material facts and no presumption of negligence arises from the fact that an operation or treatment by a surgeon or physician does not result in a cure. It is clear that there was in this case no expert testimony on the standards ordinarily followed in using the bardex and enema tubes in the X-ray studies nor was there any expert testimony as to the causal relation of such a use and the tear that appeared in the patient's colon. Consequently, the trial court was not in error in directing a verdict for the defendants. See, Yates v. Gamble, *supra,* and authorities cited therein. The rule that a verdict should be directed where it clearly appears that it would be the duty of the court to set aside a contrary verdict needs no citation.

Affirmed.