## ROBERT WIBSTAD v. CITY OF HOPKINS AND OTHERS.

190 N. W. (2d) 125.

September 10, 1971—No. 42733.

*Meagher, Geer, Markham & Anderson, Mark N. Stageberg, O C. Adamson II,* and *Joseph Vesely,* for appellants city, park board, and school district.

*Hagglund & Johnson, Dean K. Johnson,* and *Lindsay G. Arthur, Jr.,* for appellant village.

*George C. Gubbins, Jr.,* for respondent.

*Louis W. Claeson, Jr.,* for League of Minnesota Municipalities, amicus curiae.

Heard before Knutson, C. J., and Nelson, Peterson, Kelly, and Rolloff, JJ.

PETERSON, JUSTICE.

We must in this case construe the incapacity exception in Minn. St. 466.05, subd. 1, which provides that the 30-day time limit for giving written notice of a tort claim against a municipality "does not include the time, not exceeding 90 days, during which the person injured is *incapacitated by the injury from giving the notice.*" (Italics supplied.) The issue is presented upon appeal from a district court order denying a motion by defendant municipalities for summary judgment, the question raised having been certified as important and doubtful.

The facts necessary to disposition of the issue, as they appear from the pleadings and other materials submitted by plaintiff in opposition to defendants' motion, are not complicated. On June 26, 1969, plaintiff injured his knee while playing softball in organized league competition at one of several ball diamonds allegedly operated for public use by defendant city of Hopkins and other defendants in an area adjacent to Hennepin County Road No. 3 at 101 17th Avenue South, in Hopkins. He sustained his injury upon sliding into third base in such a manner that his

knee came in contact with an exposed buckle in the base webbing. Dr. Thomas Litman, an orthopedic surgeon, performed emergency treatment at Methodist Hospital making surgical repair of a 2-inch tendon laceration and placing a cylinder cast on plaintiff's leg from the groin to the ankle.

On June 28, 2 days after the accident, plaintiff was discharged from the hospital. According to Dr. Litman, one who left the hospital in plaintiff's condition would, under normal circumstances, be able to "walk about the house and conduct limited activity."

On July 2 plaintiff contacted an attorney by telephone concerning his potential claim, but it was not until July 8 that plaintiff consented to leave his house and accompany his attorney to the softball diamonds for the purpose of pointing out the exact diamond on which he was injured. His attorney, as a matter of professional judgment, considered this information necessary to the giving of sufficient notice of claim to the responsible municipality.

Plaintiff gave defendants notice of claim on July 29, the 33rd day following the accident.

The specific question for decision is whether on these facts plaintiff was as a matter of law incapacitated by the injury from giving notice for the first 3 days following the day of the accident. If plaintiff was so incapacitated, then the notice given was timely, as the trial court ruled. But if he was not so incapacitated, as we conclude, the notice was not timely and summary judgment should have been granted to defendants.

The incapacity exception of § 466.05, subd. 1, has not previously been presented for interpretation in this specific context. We, like the trial court, are not aided by any prior decisions in point. Indeed, prior to 1959 none of the general statutes dealing with municipal liability for tort contained any exception to the notice of claim requirement in favor of either minors, insane

persons, or others who are incapacitated from giving notice.[1]

However, many municipal charters made an exception to the notice requirement when the person injured was "bereft of reason" because of the accident,[2] and we interpreted such a provision in Ray v. City of St. Paul, 44 Minn. 340, 342, 46 N. W. 675, 676, to mean that plaintiff, in order to bring himself within the exception, had to prove "that his mental operations were so impaired, either through his physical condition or as the result of medical treatment required thereby, as to disqualify him from attending to, or giving needful directions in respect to, the notice" during the period of the claimed incapacity.

In view of this background, we do not think that the legislature intended to limit the applicability of the incapacity exception of § 466.05, subd. 1, to cases in which plaintiff can show that he was "bereft of reason" on days for which incapacity from giving notice is claimed, for had the legislature intended such a narrow exception it could have used the "bereft of reason" language that it used in the early municipal charter legislation.

Rather, the phrase "incapacitated by the injury from giving the notice" imports that the general test for determining the applicability of the exception should be whether, on the days for which incapacity from giving notice is claimed, plaintiff was himself physically unable as a result of the injury to investigate and otherwise prepare and give legally sufficient notice of claim, and, if so, whether plaintiff was during the same time unable to cause another to do it for him.

Plaintiff contends that he was incapacitated from giving notice for at least the first 3 days following the accident in that he was physically unable to investigate and otherwise give notice

---

[1] Orville C. Peterson, *Governmental Responsibility for Torts in Minnesota*, 26 Minn. L. Rev. 700, 715. By L. 1959, c. 599, § 1, the legislature added an incapacity exception to § 465.09. L. 1963, c. 798, § 5, which repealed § 465.09 and reenacted it as § 466.05, changed the language but not the meaning of the exception.

[2] See, e.g., Sp. L. 1885, c. 7, § 19.

that was sufficiently detailed as to "place," as required by that part of § 466.05, subd. 1, which states that a notice of claim is not legally sufficient unless it states the "time, place and circumstances" of the accident.

Assuming that the "place" was so indeterminate as to require an on-site view, we must reject the contention that plaintiff was incapacitated from so doing within the meaning of the statute. Plaintiff was ambulatory when he left the hospital on crutches on the second day after the accident. So on that day and thereafter he was not wholly disabled from going to the area of the softball diamond to identify the precise diamond on which the injury occurred. Moreover, plaintiff presumably could have obtained the same information from others, such as his teammates, who witnessed the accident.

The strictness with which the statutory requirement of timely notice of tort claim against municipalities has been enforced, as well as the close construction accorded statutory exceptions, is longstanding in this state[3] as it has been in other states.[4] The strictness with which the statute has been construed may well produce seemingly harsh results, but we are persuaded that it is so well-known and longstanding as to constitute a clear gloss upon the legislative enactment.

Reversed.

---

[3] See, e.g., Szroka v. Northwestern Bell Tel. Co. 171 Minn. 57, 213 N. W. 557, 59 A. L. R. 404, and Holsman v. Village of Bigfork, 284 Minn. 460, 172 N. W. (2d) 320. See, also, Johnson v. City of Chisholm, 222 Minn. 179, 24 N. W. (2d) 232; Hirth v. Village of Long Prairie, 274 Minn. 76, 143 N. W. (2d) 205; and Jensen v. Downtown Auto Park, 289 Minn. 436, 184 N. W. (2d) 777.

[4] See, e.g., Goodwin v. City of Fall River, 228 Mass. 529, 117 N. E. 796, albeit the statute involved there was not identical with our own.