## WAYNE BRYAN v. LUVERNE COMMUNITY HOSPITAL AND OTHERS.

217 N. W. 2d 745.

April 26, 1974—No. 44060.

*Scott & Reutter, William P. Scott,* and *Everett L. Young,* for appellant.

*Carroll, Cronan, Roth & Austin, Robert M. Austin,* and *James L. Douville,* for respondent Luverne Community Hospital.

*Gislason, Alsop, Dosland & Hunter* and *Donald F. Hunter,* for respondents Dr. Donahoe and Donahoe Clinic.

*Erickson, Zierke, Kuderer & Utermarck* and *Charles R. Zierke,* for respondent Dr. Bofenkamp.

Heard before Knutson, C. J., and Peterson, Kelly, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Plaintiff's wife, Erma Bryan, died one week after gallbladder surgery performed by defendant physicians in defendant hospital, with the assistance of surgical nurses employed by the hospital. During the surgery a laparotomy sponge was left inside decedent's abdominal cavity. Alleging causal negligence of the defendants, plaintiff initiated a wrongful death action against defendants. Defendant hospital cross-claimed against defendant physicians, defendants Dr. Robert R. Donahoe and Donahoe Clinic cross-claimed against the hospital, and all defendants denied plaintiff's claim of medical malpractice.

At the close of the testimony in this case the court directed a verdict in favor of defendant doctors. The court then issued certain interrogatories to the jury which they answered as follows:

"1. Were the nurses negligent in the making of the sponge count?

"ANSWER: No.

"2. (If you answer Question No. 1 'yes', then you must answer this question.)

"Was the sponge left in the body of Erma Bryan a direct cause of her death?

"ANSWER: . . . . . . .

"3. What is the total pecuniary loss suffered by Wayne, Linda and Ronald Bryan which was directly caused by the death of Erma Bryan?

"ANSWER: $45,000."

The court obviously felt someone had been negligent in leaving a surgical sponge in the patient's body though the jury was denied the opportunity to consider the negligence of the doctors, and, apparently disturbed by the jury's answers to the interrogatories, the court reversed the jury's finding of no negligence on the part of the nurses and ordered a finding that the nurses were in fact negligent. Left was the question of causation, namely, whether the leaving of the sponge in the body was the cause of death. The question of causation was not decided by the jury because they were instructed to answer that question only if they found the nurses negligent. A finding by the court of causation would result in the hospital being solely responsible for the $45,000 verdict. The court made a finding of no causation and, thus, no recovery. We hold that the action of the trial court in directing a verdict for the defendant doctors was reversible error in view of our holding in the case of Hestbeck v. Hennepin County, 297 Minn. 419, 212 N. W. 2d 361 (1973), decided subsequent to argument in the instant case. In that case we said:

"Defendant surgeon, joined by defendant county, vigorously contends that where in the course of a surgical operation a sponge count indicates a missing sponge and the surgeon, following skillful and accepted medical procedures in an extensive search for the missing sponge, determines that the patient's welfare requires a termination of the operation even though the sponge has not been found, a lay jury should not be permitted to find malpractice absent competent expert medical testimony that the surgeon deviated from the standard of professional skill and care of other surgeons. They contend that it was error to submit the case to the jury under the doctrine of res ipsa loquitur. We do not agree. Rather, we believe that not only was the circumstantial evidence sufficient to permit the jury to draw

an inference of professional negligence but that this is a classic case where, upon plaintiff's timely request, the court was required to instruct on res ipsa to aid the jury in performing its factfinding function." 297 Minn. 423, 212 N. W. 2d 364.

By this error the court set in motion a chain of events which could only lead to an inequitable result. While it can be argued plaintiff's attorney approved of the instructions to the jury and also agreed to allow the court to decide the issue of causation after the jury verdict was received, the latter acquiescence on the issue of causation could hardly be said to have been a free choice at that point because the trial court had already made the basic decision that adversely affected the plaintiff's case, namely, directing a verdict for defendant doctors.

Reversed and new trial granted on all issues.

PETERSON, JUSTICE (dissenting).

I fully agree with the court's conclusion that the trial court erred in directing a verdict for defendant surgeons on the issue of negligence in leaving a laparotomy sponge in decedent patient. I do not agree that it was prejudicial error, however, in view of the trial court's critical finding that the negligence of any member of the surgical team was not the cause of decedent's death. I would therefore affirm.

This court's rationalization that the error of exculpating the surgeons from liability "set in motion a chain of events which could only lead to an inequitable result" necessarily assumes that a jury could and would find causal negligence on the basis of the opinion evidence of two expert witnesses testifying on behalf of plaintiff. The opinion of these medical experts was so patently based upon demonstrated misassumptions of medical fact, however, that a finding by judge or jury based on their testimony could hardly stand in view of the fundamental principle that the plaintiff in a medical malpractice action must prove that the harm resulted from the negligence of a defendant rather than

from some other cause. Hoffman v. Naslund, 274 Minn. 521, 530, 144 N. W. 2d 580, 588 (1966).

It is undisputed that the decedent had an acutely inflamed gallbladder, a condition ascertained upon the initial opening of decedent's abdomen. There was a general concurrence among the medical experts testifying for plaintiff and defendants that such a highly infected gallbladder contains dangerous bacteria and that the immediate cause of her death was peritonitis and septecemia. The critical medical issue was whether the post-surgical presence of the sponge contributed to that condition. Both the surgeon called by plaintiff and the pathologist called by defendants testified that they were familiar with sponge retention cases where the sponge had not caused death. The precise medical issue, then, was whether this retained sponge caused this death.

The first of two witnesses for plaintiff, a retired general practitioner, was of the opinion that the sponge was the cause of death because the sponge provided a medium for bacterial growth. He admitted, however, that he had overlooked the pathologist's report that the gallbladder itself was acutely infected and deferred to the pathologist's better position to state the cause of death.

The second witness for plaintiff, a surgeon, stated his opinion that the sponge was the cause of death, basing that opinion on the assumption that an abscess developed around the sponge and subsequently ruptured. And he added that, because decedent was a diabetic, she had lessened resistance to resist infection or to wall off abscesses. But the truth of these twin assumptions was not established. The pathologist who performed the autopsy of decedent testified that there was no evidence of an abscess in the vicinity of the sponge, and other witnesses disputed that decedent was a diabetic. Given the undisputed findings of the pathologist, therefore, the opinion of the surgeon was lacking in essential foundation and amounted to little more than a conjectural statement of possible, rather than probable, causes.

The pathologist, called by defendants, described decedent's peritonitis as diffuse or generalized. He concluded from this observed fact and the lack of localized inflammation or abscess around the sponge "that the sponge was just an incidental thing there and was not related to the cause of this peritonitis." The competence of this opinion stands unchallenged.

Except to assert that the trial court's decision "emasculated" plaintiff's case, the views of the majority concerning this medical testimony related exclusively to causation are not articulated in the court's opinion. It may be that the majority believes that a contrary finding would be supported by such testimony. Or it may be that the majority contemplates that at another trial plaintiff might successfully challenge the pathologist's findings or might find medical experts to give better supported opinions of causal relationship even in the face of such pathological findings. If not, the grant of a new trial is less generous to this plaintiff than might be supposed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.