2001 ND 82

**STATE of North Dakota, Petitioner**

v.

**The Honorable John T. PAULSON, Judge of the District Court, Southeast Judicial District, and Guardian and Protective Services, Inc., as conservator for Cornelius Hopkins, Jr., a minor, Respondents.**

No. 20000302.

Supreme Court of North Dakota.

May 1, 2001.

Jean R. Mullen (argued) and Douglas A. Bahr (appeared), Assistant Attorneys General, Attorney General's Office, Bismarck, ND, for petitioner.

Timothy Q. Purdon (argued) and Thomas A. Dickson (on brief), Dickson & Purdon, Bismarck, ND, for respondent Guardian and Protective Services, Inc.

KAPSNER, Justice.

[¶ 1] The State of North Dakota has petitioned for a supervisory writ directing the district court to vacate its order denying the State's motion to dismiss the complaint filed by Cornelius Hopkins, Sr., and Dorian Aho on behalf of their son, Cornelius Hopkins, Jr. ("Hopkins"), a minor, for lack of subject matter jurisdiction. We conclude this is not an appropriate case in which to exercise our supervisory jurisdiction, and we deny the petition.

[¶ 2] On February 28, 1998, fourteen-year-old Hopkins, a resident of the Youth Correctional Center, attempted suicide by hanging himself. As a result of this suicide attempt, Hopkins was left in a permanent vegetative state.

[¶ 3] On September 4, 1998, an attorney retained by Hopkins's parents mailed to the Director of the Office of Management and Budget ("OMB") a letter to "serve as the written notice required by N.D.C.C. § 32–12.2–04(1)," advising OMB of Hopkins's injury, advising OMB "Hopkins is currently incapacitated as a result

of the injuries," and advising OMB "[t]he amount of compensation demanded in this case is in excess of one million dollars." In response, OMB said the Youth Correctional Center staff provided appropriate care for Hopkins, said OMB received the notice of claim "192 days after the alleged injury reasonably should have been discovered," and denied liability.

[¶ 4] Hopkins's parents sued the State on behalf of Hopkins. The State moved to dismiss the complaint "on the grounds the Court lacks subject matter jurisdiction because Cornelius Hopkins, Jr.'s parents failed to timely file a notice of claim as required by N.D.C.C. § 32–12.2–04(1) and failed to state a claim for relief under N.D.R.Civ.P. 12(b)(v) for a constitutional tort." The district court denied the State's motion to dismiss the complaint and granted a motion to replace Hopkins's parents with Guardian and Protective Services, Inc., which has been appointed as Hopkins's conservator, to act on behalf of Hopkins.

[¶ 5] The State petitioned this Court for a supervisory writ directing the district court to vacate the order denying the State's motion to dismiss. The State contends the district court should have granted its motion to dismiss the case because Hopkins's parents did not file a notice of claim under N.D.C.C. § 32–12.2–04(1) within 180 days. Hopkins contends the 180 day notice requirement does not apply because he is incapacitated by his injury from giving notice under N.D.C.C. § 32–12.2–04(1), which provides "[t]he time for giving the notice does not include the time during which a person injured is incapacitated by the injury from giving the notice."

[¶ 6] "This Court's authority to issue supervisory writs under N.D. Const. art. VI, § 2, and N.D.C.C. § 27–02–04 is a discretionary authority we exercise on a case-by-case basis, rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases in which there is no adequate alternative remedy." *State v. Haskell*, 2001 ND 14, ¶ 4, 621 N.W.2d 358. In determining if this is an extraordinary case in which we should exercise our "purely discretionary" power,[1] *Patten v. Green*, 369 N.W.2d 105, 106 (N.D.1985), to issue a supervisory writ to rectify an error and prevent injustice, we construe § 32–12.2–04(1), which provides:

A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice stating the time, place, and circumstances of the injury, the names of any state employees known to be involved, and the amount of compensation or other relief demanded. The time for giving the notice does not include the time during which a person injured is incapacitated by the injury from giving the notice. If the claim is one for death, the notice may be presented by the personal representative, surviving spouse, or next of kin within one year after the alleged injury resulting in the death.

[¶ 7] Section 32–12.2–04(1), N.D.C.C., "requires written notice of a claim; actual notice is insufficient." *Earnest v. Garcia*, 1999 ND 196, ¶ 6, 601 N.W.2d 260. Section 32–12.2–04(1), N.D.C.C., requires "[a] person bringing a claim against the state . . . for an injury"

---

1. This Court's decision to decline to exercise its discretionary authority to issue an original or remedial writ is not an indication of our position on the merits of the issue presented. *Daley v. American Family Mut. Ins. Co.*, 355 N.W.2d 812, 814 n. 2 (N.D.1984).

to present a written notice within 180 days after the injury "is discovered or reasonably should have been discovered." However, the statute provides: "The time for giving the notice does not include the time during which a person injured is incapacitated by the injury from giving the notice." We must determine if the statute precludes suit by a minor who is incapacitated by the injury from giving the notice if his or her parents failed to present a written notice within 180 days of discovering the injury.

▪ [¶ 8] Incapacity is not defined in N.D.C.C. ch. 32–12.2. · Incapacity to give notice is ordinarily a question of fact. *Enochs v. City of Des Moines*, 314 N.W.2d 378, 381 (Iowa 1982); *Hestbeck v. Hennepin County*, 297 Minn. 419, 212 N.W.2d 361, 367 (1973). Here, however, the State has not disputed Hopkins's personal incapacity to give the notice, recognizing in its brief that "Hopkins was left in a permanent vegetative state." Instead, the State argues:

> [T]he only interpretation of the incapacity exception is that the injured individual, once his incapacity is lifted, has 180 days to file a notice of claim. Under any other circumstances, e.g., a guardian or a parent who is not incapacitated suing on the individual's behalf, the notice of claim must be filed within 180 days of the injury.

▪ [¶ 9] Questions of statutory construction are questions of law. *Lende v. North Dakota Workers' Comp. Bureau*, 1997 ND 178, ¶ 11, 568 N.W.2d 755. We may resort to extrinsic aids to construe ambiguous statutory language. *In re Estate of Thompson*, 1998 ND 226, ¶ 7, 586

N.W.2d 847. "Where the terms of a statute are positive and unambiguous, exceptions not made by the Legislative Assembly cannot be read into the law." *Walsvik v. Brandel*, 298 N.W.2d 375, 377 (N.D. 1980). In *Douville v. Pembina County Water Resource District*, 2000 ND 124, 612 N.W.2d 270, we recently reiterated a number of other principles of statutory construction relevant to this case:

> The primary purpose of statutory construction is to ascertain the intent of the legislature. In ascertaining legislative intent, we look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. When a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute. (Citations omitted.)
>
> . . . .
>
> However, when the letter of the law is clear and free of ambiguity, we need look no further than the statutory language, *Hill v. Weber*, 1999 ND 74, ¶ 9, 592 N.W.2d 585, and "it is neither necessary nor appropriate to delve into legislative history to determine legislative intent." *Born v. Mayers*, 514 N.W.2d 687, 689 (N.D.1994).

*Douville*, at ¶¶ 9, 11.

[¶ 10] When our legislature enacted N.D.C.C. § 32–12.2–04(1) in 1995, it incorporated an incapacity provision nearly identical to that contained in Minn.Stat. Ann. § 466.05(1),[2] which the Minnesota Supreme Court had previously construed:

**2.** Section 466.05(1), Minn.Stat. Ann., dealing with tort liability of political subdivisions, contained the following incapacity provision: "The time for giving such notice does not include the time, during which the person

injured is incapacitated by the injury from giving the notice." Section 3.736(5), Minn. Stat. Ann., dealing with tort claims against the State of Minnesota, contained a nearly identical incapacity provision: "The time for

[T]he phrase "incapacitated by the injury from giving the notice" imports that the general test for determining the applicability of the exception should be whether, on the days for which incapacity from giving notice is claimed, plaintiff was himself physically unable as a result of the injury to investigate and otherwise prepare and give legally sufficient notice of claim, and, if so, whether plaintiff was during the same time unable to cause another to do it for him.

*Wibstad v. City of Hopkins*, 291 Minn. 206, 190 N.W.2d 125, 127 (1971). Construing an incapacity provision-"during which the person injured is incapacitated by his injury from giving such notice"-the Iowa Supreme Court had previously addressed the incapacity of a claimant represented by her parents and attorney in 1982:

> The district argues that Dezery should not be allowed a period of incapacitation because her parents and attorney were advancing her interests against the city within thirty days of the accident. However, section 613A.5 places the burden of notice directly on the injured party. Consequently, the section imposes no obligation on parents or other representatives to serve notice in order to preserve claims of minors, even though if a representative does provide notice it is effective. (Citations omitted.)

*Enochs v. City of Des Moines*, 314 N.W.2d 378, 380–81 (Iowa 1982). The court in *Enochs* held the injured minor plaintiff

must be afforded an opportunity to establish she was incapacitated by her injuries from being able to counsel with her attorney.

[¶ 11] Giving the words used in N.D.C.C. § 32–12.2–04(1) their plain, ordinary, and commonly understood meaning, we conclude the statute is clear and unambiguous on its face. It excludes from the 180–day notice period any time during which an injured person is incapacitated by the injury from giving the notice, and the failure of such a person's parents or others to present a timely notice on his or her behalf does not preclude suit by the injured person.[3] To adopt the State's position would require that we read into the incapacity provision of the statute an exception, which the legislature has not provided, for a person who is incapacitated by his or her injury from giving the notice, but has parents who could act on his or her behalf. We cannot create such an exception. *Walsvik*, 298 N.W.2d at 377; *Miller v. Turner*, 64 N.D. 463, 471, 253 N.W. 437, 441 (1934). We conclude the failure of the parents of an injured person "incapacitated by the injury from giving the notice" to present to OMB a notice of claim within 180 days of discovery of the injury under N.D.C.C. § 32–12.2–04(1) does not preclude the injured person from suing the State.

[¶ 12] Decisions like *Morton County v. Tavis*, 66 N.W.2d 201 (N.D.1954); *Ward County v. Balerud*, 72 N.D. 173, 5 N.W.2d

---

giving the notice does not include the time during which the person injured is incapacitated by the injury from giving the notice." The 1995 Legislative Council Report at page 230 says that Senate Bill 2080, enacting N.D.C.C. ch. 32–12.2 "incorporates many of the limitations and exclusions from liability contained in North Dakota Century Code Chapter 32–12.1, relating to liability of political subdivisions and the Minnesota Claims Act."

**3.** The claims involved here are those of Cornelius Hopkins, Jr., only. Any separate claims, if any, by his parents would be subject to the 180–day notice requirement. *Compare Besette v. Enderlin Sch. Dist. No. 22*, 288 N.W.2d 67, 75 (N.D.1980); *Enochs v. City of Des Moines*, 314 N.W.2d 378, 379 (Iowa 1982).

425 (1942); and *Miller v. Turner*, 64 N.D. 463, 253 N.W. 437 (1934), involving claims against the State Bonding Fund, do not compel a different result, as the statutes involved in those cases did not contain incapacity provisions like the one involved here. Our construction of the incapacity provision in N.D.C.C. § 32–12.2–04(1) comports with the view expressed by former Chief Justice Erickstad about the application of a notice statute to a minor in *Besette v. Enderlin Sch. Dist. No. 22*, 288 N.W.2d 67, 75 (N.D.1980): "[T]he Legislature has expressed its apparent belief that it would not be just to deprive a minor of access to our courts merely because its parents failed to comply with the notice requirements." Similarly, in N.D.C.C. § 32–12.2–04(1), the legislature has expressed its apparent belief it would not be just to deprive a person who is incapacitated by an injury from giving notice of a claim from access to the courts merely because his or her parents failed to provide written notice within 180 days of the discovery of the injury.

[¶ 13] In light of our construction of N.D.C.C. § 32–12.2–04(1), we deny the petition.

[¶ 14] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.