Mihret HAILE [*], Appellant,

v.

David E.R. SUTHERLAND, M.D., Respondent,

University of Minnesota, et al., Respondents.

No. C9–99–415.

Court of Appeals of Minnesota.

Aug. 17, 1999.

---

* In some documents, appellant's name is misspelled as "Miharet Haile" or "Milharet Haile" instead of "Mihret Haile."

Larry E. Reed, Hassan Reed, Ltd., Minneapolis, for appellant.

Jean B. Rudolph Hoppe, Geraghty, O'Loughlin Kenney, P.A., St. Paul, for respondent Sutherland.

Charles E. Lundberg, Rebecca Egge Moos, Bassford, Lockhart, Truesdell Briggs, P.A., Minneapolis, for respondents University of Minnesota, et al.

Considered and decided by CRIPPEN, Presiding Judge, SHORT, Judge, and HARTEN, Judge.

## OPINION

SHORT, Judge.

After discovering benign tissue from her left breast had been removed during surgery, Mihret Haile sued David Sutherland, M.D., the University of Minnesota, and S. Fitzsimmons, R.N. (collectively "respondents") for medical negligence and battery.

Haile appeals from the trial court's summary dismissal of both claims.

## FACTS

On September 26, 1995, Haile underwent surgery at the Boynton Surgery Clinic of the University of Minnesota to remove a mass from her left chest wall and another mass from her left axilla (armpit). In preparation for this procedure, Haile signed an affirmation of informed consent that authorized the general removal of a "left axillary mass" and a "left chest lipomatous mass." After her bandages were removed, Haile discovered benign tissue from her left breast had been excised rather than the intended mass on her left chest wall. Haile notified Sutherland, and Sutherland apologized for the situation. Sutherland later cited improper draping of the surgical site as the reason for the inaccurate surgery.

On September 5, 1997, Haile served a complaint to respondents that included claims of medical negligence and battery. In response, respondents filed a statutory demand for an affidavit of expert review. Haile filed an affidavit of expert review on October 1, 1997, that stated her "expert is now deceased and another expert opinion could not have been obtained before the action was commenced because of the applicable Statute of Limitation." Five months later, Haile filed a second affidavit signed by Haile's attorney that simply attached a letter from Haile's expert. The attached letter concluded Haile "has a valid complaint of malpractice, and should have compensation," but only relied on known facts from Haile's medical records in support of this conclusion.

On March 30, 1998, respondents notified Haile that her second affidavit did not meet the requirements of Minn.Stat. § 145.682. Haile did not respond to this notice, and, on September 2, 1998, respondents moved for summary judgment on both claims. At the motion hearing, the trial court granted Haile an extension to file responsive papers. On October 5, 1998, Haile filed responsive papers along with two additional expert letters.

On November 5, 1998, the trial court determined Haile's expert submissions were deficient and she failed to present evidence to establish a prima facie claim of battery. Accordingly, the trial court granted respondent's motion for summary judgment. Haile appeals this judgment. Respondents move to strike part of Haile's appellate brief. Because the record does not contain the complained-of materials, we grant respondent's motion. *See* Minn. R. Civ.App. P. 110.01 (providing record on appeal consists only of papers filed in trial court, exhibits, and transcript); *Thomas v. Fey*, 376 N.W.2d 266, 269 (Minn.App.1985) (recognizing appellate court generally cannot consider evidence outside record).

## ISSUES

I. Did the trial court err in dismissing Haile's medical negligence claim for failure to provide an affidavit of expert review under Minn.Stat. 145.682?

II. Did the trial court err in granting summary judgment in favor of respondents on Haile's battery claim?

## ANALYSIS

■ On appeal from summary judgment, we determine whether genuine issues of material fact exist or whether the trial court erred as a matter of law. Minn. R. Civ. P. 56.03; *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). While we view the evidence in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to create a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn.1995). We review a dismissal for violations of Minn.Stat. § 145.682 under an abuse of discretion standard. *Sorenson v. St. Paul Ramsey*

*Med. Ctr.,* 457 N.W.2d 188, 190 (Minn. 1990).

## I.

■ To prevent frivolous medical malpractice claims, the Minnesota legislature enacted Minn.Stat. § 145.682, requiring plaintiffs to support their medical malpractice claims with affidavits of expert review. *Oslund v. United States,* 701 F.Supp. 710, 712–13 (D.Minn.1988); *Stroud v. Hennepin County Med. Ctr.,* 556 N.W.2d 552, 555 (Minn.1996); *see* F. Patrick Hubbard, *The Physician's Point of View Concerning Medical Malpractice: A Sociological Perspective on the Symbolic Importance of "Tort Reform,"* 23 Ga. L.Rev. 295, 296, 326 (1989) (recognizing Minnesota's expert affidavit requirement as part of tort reform intended to prevent nuisance malpractice claims).

■ Under Minn.Stat. § 145.682, a plaintiff alleging a medical malpractice claim must present an affidavit that verifies an expert reviewed the facts of the claim and concluded the defendant deviated from the applicable standard of care and caused injury. Minn.Stat. § 145.682, subd. 3. The plaintiff then must submit a second affidavit within 180 days of the suit's commencement that discloses the identity of the experts likely to testify about malpractice and causation, the substance of the experts' facts and opinions, and a summary of the grounds for each expert's opinion. Minn.Stat. § 145.682, subd. 4(a); *see Stroud,* 556 N.W.2d at 555 (stating "it is not enough for the plaintiff's affidavit of expert identification to simply repeat the facts in the hospital or clinic record"); *Sorenson,* 457 N.W.2d at 192–93 (concluding second affidavit must include specific details concerning experts' opinions). Unless a medical malpractice claim involves issues within an area of common knowledge, failure to comply with Minn. Stat. § 145.682 results in mandatory dismissal. Minn.Stat. § 145.682, subd. 6; *see Hestbeck v. Hennepin County,* 297 Minn. 419, 424, 212 N.W.2d 361, 364 (1973) (holding affidavit of expert review is unnecessary when matters fall within developing lay comprehension of medical techniques).

■ Haile argues the trial court abused its discretion in summarily dismissing her medical negligence claim for failure to comply with Minn.Stat. § 145.682. But Haile not only submitted her second affidavit more than 180 days after the commencement of her lawsuit against respondents, she also failed to include her expert's signature on the document or identify her expert's credentials by including his curriculum vitae or professional letterhead. *See* Minn.Stat. § 145.682, subd. 4(a) (requiring second expert affidavits to be signed by listed experts and identify each expert witness). More importantly, the expert's letter attached to Haile's second affidavit merely recited the known facts of Haile's case and neglected to define the applicable standard of care for excising a mass from a patient's chest wall, cite acts or omissions by respondents that violated this standard, or explain the chain of causation between respondents' violation of the standard of care and Haile's damages. *See Sorenson,* 457 N.W.2d at 193 (requiring specific details, including applicable standard of care and acts or omissions that violated that standard of care); *see* Minn.Stat. § 145.682, subd. 4(a) (dictating affidavit of expert review must include summary of grounds for experts' opinion); *Stroud,* 556 N.W.2d at 555 (requiring more than facts from medical records in second affidavit). Under these circumstances, we cannot say the trial court abused its discretion in finding that Haile's second affidavit of expert review failed to comply with the technical and substantive requirements of Minn.Stat. § 145.682.

■ Haile urges us to consider as sufficient affidavits the two additional letters submitted to the trial court in response to respondents' motion for summary judgment. Although these letters discuss the

basis for Haile's expert's opinion, they are not in affidavit form. *See* Minn.Stat. § 145.682, subd. 4(a) (requiring affidavit that is signed by all listed experts). Moreover, Haile filed the letters six months after respondents challenged the sufficiency of Haile's second affidavit and over one year after the commencement of Haile's lawsuit. *See id.* (requiring second affidavit, signed by expert, to be submitted 180 days from commencement of suit); *cf. Anderson v. Rengachary*, 591 N.W.2d 511, 513–14 (Minn.App.1999) (reversing dismissal for failure to provide sufficient second affidavit of expert review where plaintiff filed affidavit on time and was not notified of problems with affidavit by opposing party or trial court), *review granted* (Minn. July 28, 1999). Because Haile never requested an extension to file these letters as substitute affidavits of expert review, we cannot overlook specific statutory requirements in order to conclude Haile's supplemental letters satisfied Minn.Stat. § 145.682. *See* Minn.Stat. § 145.682, subd. 4(b) (permitting parties or trial court to extend time limit for good cause); *see also Paulos v. Johnson*, 502 N.W.2d 397, 399–400 (Minn.App.1993) (acknowledging time may be extended for filing affidavit of expert review upon showing of excusable delay), *review denied* (Minn. Sept. 10, 1993).

█ In the alternative, Haile also argues her medical negligence claim does not require expert testimony. But expert testimony is necessary to support all but the most obvious medical malpractice claims. *See Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir.1989) (acknowledging expert testimony not required where malpractice can be established through medical treatises, depositions, or cross-examination); *Hestbeck*, 297 Minn. at 424–26, 212 N.W.2d at 365 (noting expert testimony unnecessary where matters fall within area of common knowledge). We agree respondents' alleged failure to perform the intended surgery appears to be straightforward medical negligence. But given Haile's broad consent to the removal of a "left chest lipomatous mass," expert testimony is crucial to understanding whether respondents breached their responsibilities during surgery or deviated from the steps necessary to assure the correct procedure was performed. *Cf. Hestbeck*, 297 Minn. at 424–26, 212 N.W.2d at 365 (holding physician's failure to retrieve sponge from patient's body during surgery did not need to be supported by expert testimony). Under these circumstances, Haile's medical negligence claim required an affidavit of expert review, and Haile failed to satisfy the requirements of Minn.Stat. § 145.682. The trial court did not abuse its discretion in dismissing Haile's medical negligence claim as a matter of law.

## II.

█ Historically, patients have sued physicians for unconsented medical procedures under the intentional tort of battery. Anthony Szczygiel, *Beyond Informed Consent*, 21 Ohio N.U. L.Rev. 171, 184 (1994); Nancy Levit, *Ethereal Torts*, 61 Geo. Wash. L.Rev. 136, 151 (1992). But as such cases involving patients' rights to self-determination began to increase, the basis for medical malpractice actions shifted from intentional to negligent torts. Levit *supra*, at 151; *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 32, at 190 (5th ed.1984) (discussing transition, beginning in the 1960's, that shifted focus in medical malpractice law from battery to negligence). Eventually, medical malpractice claims covered matters involving all acts similar to those to which the patient consented, and medical battery cases were limited to substantial and obvious deviations from the anticipated medical procedure or treatment. *See Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986) (recognizing medical battery claims apply to touchings that are substantially different in nature and character from that to which patient consented); *see, e.g., Cathemer v. Hunter*, 27 Ariz.App. 780, 558 P.2d 975, 979–80 (1976) (reversing directed

verdict for physician where patient consented to right hip prosthesis but received total hip replacement); *Pizzalotto v. Wilson*, 437 So.2d 859, 865 (La.1983) (finding physician committed battery where patient consented to exploratory surgery, and physician removed reproductive organs); *Kinikin v. Heupel*, 305 N.W.2d 589, 593 (Minn.1981) (permitting submission of battery claim where patient consented · to breast reduction and received mastectomy); *Mohr v. Williams*, 95 Minn. 261, 269–70, 104 N.W. 12, 15 (1905) (concluding physician committed battery by operating on patient's left ear rather than right ear), *overruled in part by Genzel v. Halvorson*, 248 Minn. 527, 533, 80 N.W.2d 854, 858 (1957).

■■■ Haile argues respondents' deviation from the anticipated procedure constitutes medical battery. But the record demonstrates: (1) Haile consented to the general removal of a "left chest lipomatous mass;" (2) the mass on Haile's left chest wall is only one centimeter, invisible to the naked eye, and located just below the junction of Haile's left breast and left chest wall; (3) the mass on Haile's left chest wall also is difficult to palpate with a gloved hand and shifts while positioning the patient's arm; and (4) during surgery, respondents palpated and removed a different subcutaneous mass from the most inferior aspect of Haile's left breast.

Given these undisputed facts, the procedure required to remove the intended chest mass depended on the operating team's technical ability to properly locate, drape, and palpate a precise area of Haile's left chest region. Any failure to excise the correct mass was based on subtle, technical errors rather than a substantial and obvious deviation from the intended procedure. *See Leubner v. Sterner*, 483

N.W.2d 518, 519–20 (Minn.App.1992) (recognizing technical distinction from left breast and left chest wall in medical procedures by using terms interchangeably), *rev'd* 493 N.W.2d 119 (Minn.1992). Under these circumstances, Haile's battery claim sounds in medical malpractice and must be established through expert testimony. *See* Minn.Stat. § 145.682, subd. 2 (requiring two affidavits of expert review in support of claims involving malpractice, error, or mistake against health care provider); *Kohoutek*, 383 N.W.2d at 299 (recognizing battery claims only cover procedures that substantially differ from that to which patient consented); *Kinikin*, 305 N.W.2d at 593 (stating battery best utilized in classic situation of "touching of a substantially and obviously different kind"); *see also Gaskin v. Goldwasser*, 166 Ill.App.3d 996, 117 Ill.Dec. 734, 520 N.E.2d 1085, 1094 (1988) (noting medical battery claims do not apply to matters involving acts *substantially similar* to those to which patient consented) (emphasis in original). The trial court properly dismissed Haile's medical battery claim as a matter of law.

## DECISION

The trial court did not abuse its discretion in dismissing Haile's medical negligence claim for failure to comply with Minn.Stat. § 145.682. Because Haile's battery claim sounds in medical malpractice, the trial court also properly dismissed this claim as a matter of law.

Affirmed; motion granted.