**Henry CANFIELD, et al., Appellants,**

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, an insurance company licensed to do business in the State of Minnesota, et al., Defendants,**

**Donald Starzinski, M.D., Respondent,**

**Value Medical Resources, Inc., Respondent.**

No. C1–99–1753.

Court of Appeals of Minnesota.

May 23, 2000.

Michael Alen Bryant, Bradshaw & Bryant Law Offices, Waite Park, for appellants.

William M. Hart, Rodger A. Hagen, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, for respondent Starzinski.

Sonya Rae Braunschweig, Larkin, Hoffman, Daly & Lindgren, Bloomington, for respondent Value Medical Resources, Inc.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and DANIEL F. FOLEY, Judge.

## OPINION

DANIEL F. FOLEY,* Judge

Appellant Henry Canfield sued respondent Dr. Donald Starzinski for negligence, battery, medical malpractice, and negligent

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

nondisclosure, claiming that he was injured while respondent was performing an independent medical examination. The district court granted statutory dismissal to Starzinski on the ground that Canfield's claims were not supported by a sufficient expert affidavit as required by Minn.Stat. § 145.682 (1996). Canfield contends that section 145.682 applies only to malpractice claims, and not to his negligence and battery claims for injuries that occurred during an independent medical evaluation, that no disclosure was needed here in any event, and that the affidavit he submitted was sufficient.

## FACTS

Henry Canfield was in an automobile accident, which eventually required him to undergo spinal surgery on September 3, 1996. His automobile insurance carrier, Grinnell Mutual Reinsurance Company, exercised its statutory right to require Canfield to submit to an independent medical examination (IME).[1] Grinnell used a referral agency, respondent Value Medical Resources, Inc. (Value Medical), to set up the examination. Dr. Donald Starzinski examined Canfield on September 14, 1996, 11 days after his spinal surgery.

During the examination, Starzinski had Canfield remove his protective collar so that he could examine the neck and shoulder area. Canfield alleges that Starzinski forcibly pushed on the area that had been recently subjected to surgery, causing pain in his neck and a tingling sensation in both hands. Canfield also claims that after the surgery he was doing well, but following the examination by Starzinski he experienced pain and was told by his personal doctor that a bone graft had been forced out of place.[2]

Canfield brought this lawsuit against Dr. Starzinski, Grinnell, Value Medical, and others, alleging negligence, battery, negli-

gent nondisclosure, and medical malpractice. He submitted an expert affidavit by Dr. D.M. VanNostrand. Dr. Starzinski moved for summary judgement or statutory dismissal, arguing that the expert affidavit was insufficient under Minn. Stat § 145.682 (1996). The trial court dismissed all of Canfield's claims against Starzinski for failure to submit sufficient expert affidavits. The parties stipulated to dismissal of all claims against Grinnell (pursuant to Pierringer Release) and Value Medical (without prejudice under Minn. R. Civ. P. 41.01(a)), and the trial court dismissed all remaining parties. Canfield appeals the trial court's dismissal of all claims against Starzinski.

## ISSUES

I. Does Minn.Stat. § 145.682 (1996) apply to a claim against an independent medical examiner who was not engaged in the treatment of the plaintiff?

II. Was Value Medical a proper respondent for purposes of this appeal?

## ANALYSIS

### I.

Generally, "a trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn. 1990) (citation omitted). We review a dismissal for violating Minn.Stat. § 145.682 (1996) under an abuse of discretion standard. *Haile v. Sutherland*, 598 N.W.2d 424, 426–27 (Minn.App.1999). But statutory construction is a question of law that this court reviews de novo on appeal. *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 555 (Minn.1996).

The Minnesota legislature enacted Minn.Stat. § 145.682, entitled "Malpractice

---

1. Independent medical examinations are sometimes referred to as adverse medical examinations.

2. This is a separate and distinct claim from the car accident injury and resulting surgery.

Actions; Expert Review," to prevent frivolous medical malpractice lawsuits by requiring plaintiffs to file expert affidavits supporting their allegations of malpractice. *Oslund v. United States,* 701 F.Supp. 710, 712–14 (D.Minn.1988); *Stroud,* 556 N.W.2d at 555; *Haile,* 598 N.W.2d at 427; *see also* F. Patrick Hubbard, *The Physicians' Point of View Concerning Medical Malpractice: A Sociological Perspective on the Symbolic Importance of "Tort Reform,"* 23 Ga. L.Rev. 295, 326 n. 126 (1989) (including Minn.Stat. § 145.682 as an example of heath care tort reform).

■■■ A physician is usually liable for malpractice only where a physician-patient relationship exists. *Henkemeyer v. Boxall,* 465 N.W.2d 437, 439 (Minn.App.1991), *review denied* (Minn. Mar. 27, 1991). *See generally,* Holly Piehler Rockwell, Annotation, *What Nonpatient Claims Against Doctors, Hospitals, or Similar Health Care Providers Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice,* 88 A.L.R.4th 358 (1991). And we have previously held that

> [a]n insured who is examined by a physician at the direction of the insured's insurance company does not stand in a "patient-physician" relationship with the examining physician. Therefore, a malpractice claim against the physician for that examination will not lie.

*Saari v. Litman,* 486 N.W.2d 813, 815 (Minn.App.1992); *see Peterson v. St. Cloud Hosp.,* 460 N.W.2d 635, 638 (Minn.App. 1990) (holding physician-patient relationship depends on whether care was contracted for with express or implied consent of patient for patient's benefit); *see also*

*Smith v. Katzman,* 81 Ohio App.3d 682, 611 N.E.2d 1013, 1016 (1992) (negligent examination of employee by employer's physician not malpractice).

Generally Minn.Stat. § 145.682 has been applied to malpractice cases between health care providers and their patients. *See, e.g., Lindberg v. Health Partners, Inc.,* 599 N.W.2d 572 (Minn.1999) (malpractice case where clinic failed to advise expectant mother to come to hospital and baby was stillborn); *Stroud,* 556 N.W.2d 552 (action by trustee against hospital for failure to diagnose and treat); *Thorson v. Rice County Dist. One Hosp.,* 437 N.W.2d 410 (Minn.1989) (patient who became paraplegic sued hospital alleging doctor's negligent emergency treatment); *Haile,* 598 N.W.2d 424 (malpractice claim by patient against doctor who performed her surgery); *Parker v. O'Phelan,* 414 N.W.2d 534 (Minn.App.1987) (claim against doctor and hospital for negligent medical care and treatment), *aff'd mem.* 428 N.W.2d 361 (Minn.1988). Minnesota appellate courts have applied Minn.Stat. § 145.682 only to negligence claims against a health care provider who diagnosed or treated a patient.[3]

■■■ The issue in this case is whether the expert affidavit requirement applies to a claim against a doctor who was not providing care and treatment, but was conducting an IME required and paid for by an insurer. We hold that because this is not a claim for medical malpractice, Minn. Stat. § 145.682 does not apply.

The "Malpractice Actions; Expert Review" statute requires that:

> [i]n an action alleging malpractice, error, mistake, or failure to cure, whether

---

**3.** A Westlaw search in the "Minnesota Cases" database yielded 63 opinions (30 published and 33 unpublished) citing Minn.Stat. § 145.682. All of these cases involved diagnosis, care, or treatment given by a health care provider to a patient/plaintiff who later alleged malpractice. The only case not involving allegedly negligent conduct by a treating health care provider is *Porter v. Children's Health–Care,* No. C5–98–1342, 1999 WL 71470 (Minn.App. Feb.16, 1999), *review denied* (Minn. Apr. 28, 1999), where we held the expert affidavit requirement applied to a plaintiff alleging hospitals were negligent for violating standards requiring unfettered access to emergency medical treatment. But even in that case, the allegations related to the "hospital's conduct in facilitating and delivering emergency *medical care to patients.*" *Id.* at *3 (emphasis added).

based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

Minn.Stat. § 145.682, subd. 2.

Subdivision one of the statute defines "health care provider" as

a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care as defined in section 145.61, subdivisions 2 and 4, or a certified health care professional employed by or providing services as an independent contractor in a hospital.

Minn.Stat. § 145.682, subd. 1.

Minn. Stat. § 145.61 (1996) provides definitions for "professional" and "health care." Under this statute, "professional" means a person licensed or registered to practice a healing art. Minn.Stat. § 145.61, subd. 2. Licenses for practicing medicine are required for prescribing drugs, performing surgery, or attempting to

prevent or to diagnose, correct, or treat * * * any disease, illness, pain, wound, fracture, infirmity, deformity or defect of any person[.]

Minn.Stat. § 147.081, subd. 3 (1996). And "health care" refers to

professional services rendered by a professional or an employee of a professional and services furnished by a hospital, sanitarium, nursing home or other institution for the hospitalization or care of human beings.

Minn.Stat. § 145.61, subd. 4. Although independent medical examiners may be licensed health care providers, because they are not providing care or treatment at the

time of their examination, this statute does not cover them.

Other states have defined "health care provider" for the purposes of tort reform statutes and statutes of limitations, and most of the definitions include providing health care and treatment to patients. *See, e.g., Arenz v. Bronston,* 224 Wis.2d 507, 592 N.W.2d 295, 298 (Wis.Ct.App. 1999) (defining "health care provider" as individual involved in diagnosis, treatment or care of patient who is licensed by state to do so); *Troyer v. Dept. of Health & Soc. Servs.,* 722 P.2d 158, 161 (1986) (summarizing "health care provider" as "one who cures or prevents impairments of the normal state of the body"). *See generally* George L. Blum, Annotation, *Medical Malpractice: Who Are "Health Care Providers," or the Like, Whose Actions Fall within Statutes Specifically Governing Actions and Damages for Medical Malpractice,* 12 A.L.R.5th 1 (1993) (reporting application of various states' definitions of "health care provider," none of which directly address IMEs).

Judges and attorneys alike are mindful that in Minnesota courtrooms and courtrooms across the country, independent medical examiners testify daily in injury actions. When asked if, as an independent medical examiner, they are responsible for the care and treatment of the injured claimant, the response is always "no." We conclude there is no credible showing that, in such situations, the statute in question applies.

After reviewing the statutes and cases and taking into consideration the legislative purpose of the law, this court understands that expert affidavits are required when a health care provider is accused of "malpractice, error, mistake, or failure to cure" as a result of giving care or treatment. Because Starzinski did not provide any diagnosis, care, or treatment to Canfield during the IME, Starzinski was not acting as a health care provider under Minn.Stat. § 145.682. Under these circumstances, the expert affidavit requirement

does not apply, and we reverse the dismissal and remand for trial.

## II.

The trial court dismissed Value Medical by agreement of the parties. Because no party has raised any issue involving Value Medical, it is dismissed from this appeal.

## DECISION

Because the expert affidavit requirement of Minn.Stat. § 145.682 does not apply to Canfield's battery and negligence claims against independent medical examiner Dr. Starzinski, the district court erred in dismissing these claims and we remand for trial. Value Medical is not a respondent for purposes of this appeal.

**Reversed and remanded.**