*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0381**

Mary Beth Davidson,
Appellant,

vs.

North Memorial Health Care,
d/b/a North Memorial Medical Center,
and d/b/a North Memorial Ambulance Service,
Respondent.

**Filed January 12, 2015
Affiormed
Reyes, Judge**

Hennepin County District Court
File No. 27-CV-13-6250

Joseph J. Osterbauer, Christina M. Kath, Mary A. Bejar; Osterbauer Law Firm, Minneapolis, Minnesota (for appellant)

Mark W. Hardy, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Appellant Mary Beth Davidson challenges the dismissal of her medical-

malpractice action for failure to comply with the expert-identification requirements of

Minn. Stat. § 145.682 (2014), arguing that (1) the district court abused its discretion when it ruled that appellant failed to comply with the expert affidavit requirements and (2) the district court abused its discretion when it dismissed appellant's claim in its entirety. We affirm.

## FACTS

On January 11, 2011, appellant called for an ambulance from respondent North Memorial Health Care due to lethargy and breathing difficulties. At the time of the call, appellant suffered from upper respiratory illness, severe diabetes, and peripheral neuropathy, and was a left-leg amputee who was independent in wheelchair transfers. In the process of being moved from her wheelchair to a stretcher, appellant allegedly sustained an injury to her right ankle.[1] Appellant was transported to Methodist Hospital, where she was admitted to the emergency room for her respiratory illness.

During her first day at the hospital, doctors noticed signs of an injury to appellant's right ankle. X-rays confirmed that appellant had suffered a fracture, and Kathleen Peter, M.D. performed surgery on the ankle the following day. The surgery was unsuccessful, and two subsequent procedures were performed in early 2011. Ultimately, the surgical repair of the ankle failed, and appellant suffered a deep infection requiring below-the-knee amputation on March 15, 2011.

---

[1] The parties dispute the exact manner in which appellant fell. In her complaint, appellant contends that she was dropped twice by the paramedics when they did not offer her support when moving her from the wheelchair to the gurney. Respondent contends that she fell in a controlled fashion, with most of her body coming to rest on top of one of the paramedics. While the medical records only state that she "fell between wheelchair and stretcher," both parties agree that the transport was "unsuccessful."

2

Appellant's original complaint alleged that the paramedics were negligent in transferring appellant from her wheelchair to the stretcher and that such negligence directly contributed to and proximately caused her injuries. In its answer, respondent requested an initial affidavit of expert review in accordance with Minn. Stat. § 145.682, subd. 2, 3. However, appellant failed to serve respondent with an affidavit of expert review. Additionally, respondent alleges that appellant failed to serve an affidavit of expert identification within 180 days of commencement as required by Minn. Stat. § 145.682, subd. 2, 4(a).[2] Based on appellant's failure to produce the required affidavits, respondent filed a motion to dismiss in September 2013. The district court granted respondent's motion, ruling that appellant's medical-negligence claims required expert testimony to establish a prima facie case against respondent. Appellant appeals only the determination that expert testimony is required in this case.

**D E C I S I O N**

Appellant challenges the district court's dismissal of her medical-malpractice claim with prejudice under Minnesota Statutes section 145.682. This court reviews a dismissal for failure to comply with section 145.682 under an abuse-of-discretion standard. *Haile v. Sutherland*, 598 N.W.2d 424, 426 (Minn. App. 1999). A district court abuses its discretion when its ruling is based on an erroneous view of the law, against the facts in the record, or exercises its discretion in an arbitrary or capricious manner. *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011). There are two issues in this

---

[2] Appellant claims that a report from Dr. Peter, which was included in appellant's answers to interrogatories, qualifies as an affidavit of expert identification under subdivision 4. This issue will be discussed.

3

case: (1) whether appellant complied with the affidavit requirements for certifying an expert and (2) whether the dismissal of appellant's claim in its entirety was warranted.

## I.     Affidavit Requirements

A plaintiff in a medical-malpractice case has the burden of proof to establish a prima facie case of medical malpractice, which requires a plaintiff to show: (1) the standard of care recognized by the medical community as applied to the defendant's conduct; (2) that the defendant departed from that standard; (3) that the defendant's departure was a direct cause of the plaintiff's injuries; and (4) damages. *Tousignant v. St. Louis Cnty.*, 615 N.W.2d 53, 59 (Minn. 2000). "Expert testimony is generally required in medical-malpractice cases because they involve complex scientific or technological issues." *Mercer v. Andersen*, 715 N.W.2d 114, 122 (Minn. App. 2006). In a malpractice case where expert testimony is necessary to establish a prima facie case, a plaintiff must meet two affidavit requirements set forth in section 145.682. Minn. Stat. § 145.682, subd. 2; *Anderson v. Rengachary*, 608 N.W.2d 843, 846 (Minn. 2000). First, the complaint must include an affidavit by the plaintiff's attorney (Affidavit of Expert Review) stating that the attorney has reviewed the case with an expert "whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff." Minn. Stat. § 145.682, subds. 2, 3. Second, plaintiff must serve upon defendant, within 180 days after commencement of the suit, an affidavit (Affidavit of Expert Identification) which includes:

4

> [T]he identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

*Id.* at subd. 4(a).

The requirements for both the Affidavit of Expert Review and the Affidavit of Expert Identification were enacted "as a means of readily identifying meritless lawsuits at an early stage of litigation." *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 725 (Minn. 2005). Both affidavit requirements are implicated in this case.

### A.    Affidavit of Expert Review

Appellant argues that section 145.682 does not apply because expert testimony is not needed to establish her prima facie case of medical malpractice. The affidavit requirements of section 145.682 are only applicable to medical malpractice actions "as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2. If expert testimony is not necessary to establish a prima facie case, then the affidavit requirements of subdivisions 3 and 4 do not apply. *See Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990). Therefore, "the threshold question in this matter is whether [appellant's] claim required expert testimony to establish a prima facie case." *Tousignant*, 615 N.W.2d at 58.

An exception to the expert-testimony requirement exists when a negligent action is of the type "within the general knowledge and experience of lay persons." *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985). "But expert testimony is necessary to support all but the most obvious medical malpractice

5

claims." *Haile*, 598 N.W.2d at 428. Notably, cases which fall under the common-knowledge exception have been described as "exceptional" and "rare." *Sorenson*, 457 N.W.2d at 191.

Appellant argues that the alleged negligence—namely, the failed transfer resulting in a fractured ankle—was plain, obvious, and non-scientific, such that expert testimony is not required. Appellant contends that this case is similar to those listed in *Miller v. Raaen*, which provided a number of examples where expert testimony was not required:

> Thus it has been held that recovery without expert testimony may be permitted, as where metal clips were left in the body after surgery; where there was a failure to remove a sponge after surgery; where a dentist permitted a grinding disc to slip and cut membranes and tissues at the base of the tongue; where a dentist continued to administer gas as an anesthetic after cyanosis appeared; where ether was administered as an anesthetic after cyanosis appeared as a danger signal; where X-ray burn resulted from the improper administration of X-ray; and where a chemical burn from phenol resulted from the improper application of the chemical.

273 Minn. 109, 114-15, 139 N.W.2d 877, 880 (1966) (citations omitted). The line of cases discussed in *Miller* did not require expert testimony because they all involved "situations where there was no doubt about the cause of the result complained of, and the result would not have followed in the absence of a breach of duty, the establishment of which did not involve any scientific knowledge." *Id*. at 273 Minn. at 116, 139 N.W.2d at 880. But the same cannot be said here. Despite appellant's arguments to the contrary, it cannot be stated that appellant's fractured ankle *undoubtedly* caused the amputation. In fact, the record indicates that there were other factors that could have contributed to the failed operations and subsequent amputation. Dr. Peter's letter states that appellant was

6

insensate below her knee due to peripheral neuropathy secondary to diabetes. Furthermore, appellant's bone was twice noted as "soft" during the operation, consistent with osteopenia, a condition which lowers bone-mineral density.

Admittedly, it cannot be conclusively stated that the amputation was caused by appellant's osteopenia or her being insensate below the knee rather than the ankle fracture. But this uncertainty is precisely why expert testimony is necessary. *See Maudsley v. Pederson*, 676 N.W.2d 8, 14 (Minn. App. 2004) ("The primary purpose of an expert affidavit is to illustrate 'how' and 'why' the alleged malpractice caused the injury."); *see also Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn. 1992) (concluding that a prima facie case of medical malpractice requires causation, shown "normally in the form of expert testimony," because "a jury should not be permitted to speculate as to possible causes of a plaintiff's injury"). Although appellant is correct that a layperson might understand that an infection could require surgery, it is certainly not within the realm of "practical common sense" that a broken ankle would result in the loss of a limb. *See Miller*, 273 Minn. at 114, 139 N.W.2d at 880. Instead, expert testimony is required to fill in the causal gap between fracture and amputation. Because it is undisputed that appellant failed to file an Affidavit of Expert Review, the district court's decision to grant the dismissal was correct.

Appellant briefly raises an argument that the district court abused its discretion by sua sponte reaching the issue of causation. Appellant is correct that the majority of the discussion in the briefs to the district court and at the hearing revolved around other matters, such as the appropriate standard of care. However, the issue before the district

court was whether expert testimony was required to establish a prima facie case of medical malpractice. Upon filing her claim, appellant assumed the burden of establishing a prima facie case of medical malpractice, an element of which is causation. *Tousignant*, 615 N.W.2d at 59. Because causation is a necessary element of a medical-malpractice analysis, it was within the district court's discretion to comment on it.

## B. Affidavit of Expert Identification

Appellant argues that even if section 145.682 applies, the affidavit requirements were in fact met because, under the language of subdivision 4, answers to interrogatories can be enough to satisfy the statute's affidavit provisions. *See* Minn. Stat. § 145.682, subd. 4(a) (providing that "[a]nswers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the discovery under the Rules of Civil Procedure"). This argument is unconvincing for three reasons.

First, appellant failed to make this argument at the lower court. Appellant argues that she satisfied the affidavit requirements when she attached a letter from Dr. Peter to her interrogatory responses. Doing so, appellant argues, was enough to satisfy the affidavit requirements pursuant to the language of subdivision 4. But appellant did not make the argument in her memorandum to the district court and she failed to raise it at

any time during the hearing.[3]  She is thereby precluded from raising it for the first time here.  *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (concluding that a reviewing court will only consider "issues that the record shows were presented and considered by the trial court in deciding the matter before it").

Second, even if appellant had properly preserved the issue for appeal, Dr. Peter's letter does not satisfy the procedural and substantive requirements of subdivision 4.  Under subdivision 4, answers to interrogatories will satisfy the Affidavit of Expert Identification requirement if they are "signed by the plaintiff's attorney and by each expert listed in the answers."  Minn. Stat. § 145.682, subd. 4(a).  Instead of getting Dr. Peter's signature on the answers to interrogatories, appellant's counsel simply attached Dr. Peter's letter to the answers nearly 10 months after the letter was authored, well past the 180-day requirement under the statute.  Thus, appellant has failed to meet the procedural requirements of subdivision 4.

Moreover, the substantive requirements of subdivision 4 are equally absent, as the supreme court has made clear that "broad and conclusory statements as to causation and empty conclusions are insufficient."  *Broehm*, 690 N.W.2d at 726 (quotation omitted).  "[I]t is not enough for the expert affidavit to simply repeat the facts in the hospital record; rather, the affidavit should set out how the expert will use those facts to arrive at opinions

---

[3] Notably, appellant referred to Dr. Peter's letter in the introductory portion of her memorandum to the district court.  However, this reference is nothing more than a general description of what was in Dr. Peter's letter.  At no time does appellant argue that the letter itself was enough to satisfy the affidavit requirements of section 145.682 and appellant appears to concede as much during the district court hearing, when she stated, "I'm going to touch on the two reasons why we have not provided the expert affidavits."  Accordingly, appellant is precluded from raising this issue for the first time on appeal.

9

of malpractice and causation." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002) (quotations omitted). Dr. Peter's letter summarizes her involvement with appellant but makes no mention of how Dr. Peter will "use those facts to arrive at opinions of malpractice and causation." *Id.* In fact, Dr. Peter specifically highlights appellant's other health problems, stating: "Of note is that the patient had significant peripheral neuropathy, essentially insensate from toes to just distal to her right knee secondary to severe complications of diabetes." The closest Dr. Peter gets to discussing causation is when she describes the many surgical procedures as "secondary to the injury in which [appellant] sustained her right ankle fracture." However, this statement is immediately qualified by the next sentence discussing appellant's other ailments, stating: "Again, the poor outcome was not surprising with the peripheral neuropathy and immunocompromise this patient had, essentially a Charcot ankle joint." *Id.* The *Teffeteller* court held that a district court did not abuse its discretion by dismissing a medical-malpractice claim because an expert affidavit "failed to detail a chain of causation." 645 N.W.2d at 429. Because a detailed "chain of causation" is similarly absent in Dr. Peter's letter, the same result applies here.

Third, even if we assume that the issue was properly preserved for appeal and that the procedural and substantive requirements of subdivision 4 were satisfied, appellant's argument appears to be based on a misinterpretation of the statute. In her brief, appellant states "subdivision 4 also provides that 'answers to interrogatories that state the information required by this subdivision satisfy the requirements' of the statute." This is an incomplete quotation. A more complete citation to the statute reads: "Answers to

10

interrogatories that state the information required by this subdivision satisfy the requirements *of this subdivision*." Minn. Stat. § 145.682, subd. 4(a) (emphasis added). Importantly, the phrase "of this subdivision" makes clear that the answers to interrogatories may satisfy the affidavit requirements of subdivision 4—namely, the Affidavit of Expert Identification. But this language is specifically limited to subdivision 4, and says nothing of the subdivision 3 requirements for an Affidavit of Expert Review. Thus, even if we assume that Dr. Peter's letter satisfied the requirements of subdivision 4, appellant still failed to meet the affidavit requirements of subdivision 3. This further supports the conclusion the district court's dismissal was not an abuse of discretion.

## II.     Dismissal of the Claim in its Entirety

Appellant argues that the district court abused its discretion when it dismissed the case in its entirety, rather than allowing appellant an opportunity to cure. Appellant cites the safe-harbor provisions of section 145.682, arguing that a dismissal of her claim in its entirety would be contrary to the legislative intent of those provisions. It is true that a 2002 amendment to section 145.682, subdivision 6, added language which grants plaintiffs an opportunity to cure an insufficient affidavit. Minn. Stat. § 145.682, subd. 6. The current version of subdivision 6 provides a number of procedural safeguards aimed at preventing dismissal of an otherwise meritorious case. *See Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 217 (Minn. 2007). Subdivision 6(a) provides a 60-day window for plaintiffs to serve an Affidavit of Expert Review once a demand is made by a defendant. Minn. Stat. § 145.682, subd. 6(a). Subdivision 6(c) allows plaintiffs to cure an insufficient Affidavit of Expert Identification at any time within the

11

45-day period between service of a motion to dismiss and the hearing on that motion. *Id*. at subd. 6(c). In addition, if a plaintiff fails to meet the 180-day deadline for service of the Affidavit of Expert Identification, a plaintiff may be provided an extension for good cause. *Id*. at subd. 4(b).

However, appellant has failed to take advantage of any of these safeguards. No Affidavit of Expert Review was filed within 60 days. No Affidavit of Expert Identification was filed between the service of the motion to dismiss and the hearing, no extension of the 180-day deadline was sought, and no argument was made that appellant had in fact satisfied the requirement through Dr. Peter's letter. Although appellant correctly points out the statute's procedural safeguards, the plain language of section 145.682, subdivision 6, makes clear that a failure to take advantage of these safeguards will result in a "mandatory dismissal with prejudice." Minn. Stat. § 145.682, subd. 6(a)-(c). Courts have stated that "strict compliance" with section 145.682 is required, "[s]o as not to undermine the legislative aim of expert review and disclosure." *Broehm*. 690 N.W.2d at 726; *see also Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 577-78 (Minn.1999) (concluding that the statutory requirements of section 145.682 are "uncomplicated and unambiguous" and contemplate strict compliance). As such, a dismissal in the entirety is warranted where, as here, a plaintiff simply fails to avail herself of the statute's protection. Because appellant failed to do so, the dismissal was not contrary to legislative intent and did not constitute an abuse of discretion.

**Affirmed**.